No. 12892

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

WRIGHT EWAN and HAZEL EWAN,
husband and wife,

Plaintiffs and Appellants,

-vs-

OLAV S. STENBERG, and GLADYS K. STENBERG,
husband and wife, LOUISE BEER, and the
EQUITABLE LIFE ASSURANCE SOCIETY OF THE
UNITED STATES,

Defendants and Respondents.

---

Appeal from:  District Court of the Sixth Judicial District,
Honorable Charles Luedke, Judge presiding.

Counsel of Record:

For Appellants:

Lee Overfelt argued, Billings, Montana

For Respondents:

Longan and Holmstrom, Billings, Montana
Franklin S. Longan argued, Billings, Montana

---

Submitted:  April 11, 1975

Decided:

Filed:

---

Clerk

Chief Justice James T. Harrison delivered the Opinion of the Court.

Plaintiffs appeal from a summary judgment entered for defendants in the district court, Sweet Grass County.

Plaintiffs' amended complaint alleged a right of way by prescription or a public way across Stenberg's land or, in the alternative, to condemn a way of necessity. All defendants filed motions to dismiss and to strike. Defendant Stenberg was ordered to show cause why injunctive relief should not be granted. The district court treated the motions as being for summary judgment. Stenberg has filed no answer. The testimony which was before the court was that adduced at the hearing on the motions and the order to show cause. Prior to that hearing the judge, in company with counsel, viewed the premises. Following the hearing, summary judgment of dismissal was entered for the defendants. Plaintiffs appeal.

The district judge at the time of making the order granting summary judgment filed a memorandum and provided it should constitute the findings of fact and conclusions of law, and we will liberally quote from it, since the court painstakingly answered the contentions of plaintiffs. It reads:

"Commencing in 1945 the Plaintiffs operated a cattle and sheep ranch utilizing two tracts of non-joining fee land. One tract, Tract A, is located in the valley of the Boulder River and the other, Tract B, is located generally on top of a hill which is steeply sloped on the sides. Tract A is the home place and is used for winter pasture while Tract B is summer pasture and has sometimes been hayed in part. The hill on which Tract B is located is situated in the interstices of a fork of the Boulder River so that this hill

- 2 -

is bounded on one side by the main Boulder River and the main Boulder road (Highway 298), and on the other by the West Boulder River and West Boulder road. Although Tract B lies between two roads, it abuts upon neither of them, it being hemmed in on all sides by other fee land ownerships so that ingress and egress require the traversing of lands of other owners. * * *

"From the beginning of Plaintiffs' operations of these lands, a use exchange of 40 acre tracts was in effect with one of the landowners adjoining, being Mr. Work, a predecessor in title to Defendants Stenberg. By virtue of this use exchange, a 40 acre extension (Parcel X) was tacked onto one end of Tract B, toward and almost reaching the West Boulder road, so that Tract B's isolation was narrowed to within a matter of yards and for all practical purposes made access to Tract B from the West Boulder road possible. However, the West Boulder side is the side farthest from Plaintiffs' Tract A home place, so that as occasion required, the Plaintiffs would trail down the East side of the hill to Tract A, in the process of which they were crossing another part of the Work land. The general pattern which developed in Plaintiffs' operation over the years was to move onto Tract B in the Spring by going around to the West Boulder side and entering through Parcel X. In the late Fall or early Winter, the livestock would be brought down the East side of the hill, across the Work land, through a Work gate and on to Plaintiffs' Tract A, this being the shortest and most direct route. Because of topographical encumbrances on the hill side, the livestock generally followed a singular course so that a trail developed.

"In the early 1950's the Work land was sold to Mr. Beer, who, in about 1956, bulldozed a rough road on the East side which had the same general beginning and ending points as the old cow trail but traversed a somewhat different route in between in an effort to make a grade and route which would make some vehicular use possible. Except for an insignificant portion where the road edged onto Plaintiffs' land, the road was all on Beer property. Plaintiffs did not participate in making this road or in maintaining it, but after it was built they used it in normal course of their operations on Tract B for checking on the cattle, moving equipment and livestock, etc.

"At all times, there was another access route available into Tract B from the West Boulder side, starting at point 'Z' and following up the Mason Coulee over what is now Schilling property to the side of the buildings of the Mason homestead which were situated on Tract B. Plaintiffs, however, made only occasional use of this route, it obviously being less convenient than the others. Also, Plaintiffs have at times used a route up Chokecherry Springs, which is bulldozed but is very steep and also traverses Defendant Stenberg's land.

"In 1966 the Defendant Stenbergs became the owners of the Beer land and the land use exchange of the two 40's was continued as was the Plaintiffs' pattern as to ingress and egress to Tract B. Sometime in late 1971 or early 1972 and as a consequence of/a disagreement of some sort, Stenberg advised Plaintiffs that the land use exchange would be discontinued and that Plaintiffs were not to use the East side route to and from Tract B anymore because he didn't want them on his land. Pursuant

- 4 -

to this notification Stenberg barricaded the entry of the route where it entered his land and each party re-fenced their 40 acre tract into their own units which effected a discontinuance of the use exchange. In the Fall of 1972 and again in the Fall of 1973, Plaintiffs nevertheless used the East side route to bring their cattle out of Tract B, going through Stenberg's barricade to do so.

"The evidence shows that other persons, many of them being friends of Plaintiffs, also used this road for hunting or sightseeing purposes from time to time in past years.

"There is a sharp conflict between the parties over whether the gate into Defendant Stenberg's land to the Beer road was or was not ever locked or posted. The Plaintiffs are definite in their belief that it never was, while witnesses for the Defendants state their best recollection to be that locks and 'No Trespassing' signs were used during hunting season. Such locks and signs, however, were intended to apply to traffic of hunters and not to neighbors who would be welcome to a key to go through.

"Plaintiffs contend that they have a right-of-way by prescription over the East side route because of consistent usage of it over the years and, because it has been used by a number of others, it may in fact be a public road, or, in any event, that because of the total isolation of Tract B the East side route should be decreed to Plaintiffs as a right-of-way easement founded upon necessity, a la condemnation.

"The basic requirements to the accrual of a right-of-way easement by prescription are so well established

by Montana case authority that a review of them is unnecessary. (See White v. Kamps, 119 Mont. 102 and Scott v. Weinheimer, 140 Mont. 554 as examples.) Suffice it to note that one requirement is that the usage made of the claimed right-of-way be adverse and hostile, not permissive. The totality of the evidence here can support only one conclusion, namely, that from the beginning the Plaintiffs' usage of the trail and the later bulldozed road was a matter of neighborly cooperation between friendly ranchers. Consequently, it was a permissive use and has remained so until the Plaintiff's defiance of Stenberg's barricade in 1972, which is not a sufficient length of time to ripen into a prescriptive right. The fact that the use has been permissive rather than adverse is fatal to the claim of Plaintiffs as to a prescriptive easement. (Wilson v. Chestnut, 31 St.Rep. 606)

"The assertion that the road has become a public one, entitling Plaintiffs to its usage as members of the public, also is not supported by the facts appearing. Occasional use by hunters, by sightseeing friends and by neighbors visiting neighbors falls short of the extent and type of usage necessary to result in the accrual of a public right.

"The remaining ground upon which Plaintiffs' claim relief is that they are entitled to be decreed a right-of-way by necessity over the route in dispute. The crux of this claim is the question of whether the requisite necessity does or does not exist. It is not disputed that Plaintiffs' Tract B is entirely surrounded by other ownerships. At the same time, it is clear that the original and historical access route, the so-called

'Mason Coulee road', always has been, and is now, available as a way into Tract B. It is also clear that in the years of 1972 and 1973, Plaintiffs had a way of getting into Tract B from a point of entry off of the West Boulder road into State land which they have had continuously leased and which adjoins Tract B. The fact is that the Plaintiffs do have other ways of access to and from Tract B. The fact that the other ways involve longer distances and more inconvenience is not an acceptable basis upon which to grant the relief requested. The criterion is not one of convenience, but of necessity.

"In light of the facts appearing, the request for injunctive relief by Plaintiffs must be denied. Further, it is apparent that all of the essential factual issues have been addressed and that no genuine issue of a material fact remains so that Defendants are entitled to judgment as a matter of law."

While plaintiffs contend the district court erred in its rulings, finding and conclusions, we have carefully examined the record and in our opinion it fully supports the findings and conclusions of the court.

In such a situation the summary judgment should be, and it is hereby, affirmed.

---

Chief Justice

We Concur:

Wesley Castles

John Conway Harrison

Frank I. Haswell

---

Justices.

- 7 -