No. 13110

IN THE SUPREME COURT OF THE STATE OF MONTANA

1976

---

DONALD INGELS and BONITA INGELS,

Plaintiffs and Appellants,

-vs-

CLAUDIA ANN MICKALSON and
TERRANCE LEE MICKALSON,

Defendants and Respondents.

---

Appeal from: District Court of the First Judicial District,
Honorable Gordon R. Bennett, Judge presiding.

Counsel of Record:

For Appellants:

Small, Cummins and Hatch, Helena, Montana
Carl Hatch argued, Helena, Montana

For Respondents:

Keller, Reynolds and Drake, Helena, Montana
Herbert George argued, Helena, Montana

---

Submitted: March 5, 1976

Decided: MAY 6 1976

Filed: MAY 6 1976

Thomas J. Kearney
Clerk

Hon. Robert S. Keller, District Judge, sitting for Chief Justice
James T. Harrison, delivered the Opinion of the Court:

Plaintiffs Donald and Bonita Ingels brought suit
against defendants Claudia Ann and Terrance Lee Mickalson,
to establish an easement across the rear portion of a lot in
the City of Helena, which Mickalsons are purchasing.  The claim
is predicated upon a prescriptive easement, or in the alter-
native, an easement by implication.

The properties involved are lots 20 and 21 of Block
395, of Helena Townsite, located adjacent to each other on
West Lawrence Street in the City of Helena; the Ingels are the
owners of lot 20, the lot to the east, and Mickalsons are
buying lot 21 on a contract for deed.  Prior to April 1968,
lots 20 and 21 belonged to the same owner, and they were sold
at the same time, with lot 20 being conveyed to Ingels.  By
mesne conveyances, Mickalsons acquired, and entered into possession
of, lot 21 in February 1973, (four years and ten months after
Ingels acquired their possession).  The lots are bordered on the
north by West Lawrence Street, and on the south by an alley;
Ingels' lot is 42 feet wide and 100 feet deep, and Mickalsons'
lot appears to be of the same dimensions, although not material
here.

On the southeast corner of Ingels' lot is a garage 23 feet
long, with the back of the garage on the east edge of the
property line, and the south side of the garage is immediately
adjacent to the alley.  The garage door fronts to the west.  On
the southwest corner of Mickalsons' lot is a shed, and prior
to April 1974, there was nothing between the garage on Ingels'
lot and the shed on Mickalsons' lot.  On or about April 5, 1974,
Mickalsons erected a fence on the property line between the
garage and the shed, to connect with an existing fence that had
already been erected on the property line between the two lots.

Ingels contend that they used their garage only by driving across the southeastern portion of Mickalsons' lot where the clear space existed between Mickalsons' shed and their garage; that they have been doing this ever since they acquired the property in April 1968, and that they had an easement by prescription. In the alternative, Ingels contend they had an easement by implication; that when the property was sold to them in 1968 by the owner of both lots, the position of the garage makes it obvious that the only way to use the garage was to come across the corner of the adjacent lot, and that since the owner of both lots sold lot 20 to Ingels, there was an implied easement to use lot 21 for access.

The evidence of use of Mickalsons' property by the Ingels was in dispute at the trial. Undisputed was the fact that for a period of time varying from six weeks to two and a half months, near the end of the five-year period necessary to acquire a prescriptive right (April 1968 to April 1973), the Ingels did not use Mickalsons' property for the reason that one of their vehicles was parked in front of their garage, in a state of disrepair, and was not repaired for that length of time, blocking any use of Ingels' property by Ingels. As fate would have it, this was during the same period of time that a realtor showed the adjoining lot to Mickalsons, and they acquired their property, i.e., there was certainly no notice to anyone at that time that the Ingels were using Mickalsons' property.

It was further undisputed that the use of the property by the Ingels was not hostile, nor exclusive. Mickalsons testified that they never saw the Ingels use the property at any time, but taking Ingels' testimony at its best, they got along exceptionally well with the various tenants of lot 21, and the use of the clear space between the shed and the garage was shared, i.e., the tenants of lot 21 would drive across a portion of lot 20 to get to the

shed, and the Ingels drove across a portion of lot 21 to get to the garage.

Thus, the use was neither continuous, nor exclusive, Scott v. Weinheimer, 140 Mont. 554, 374 P.2d 91. The Ingels' usage of the claimed right-of-way was not adverse and hostile, as distinguished from permissive, Ewan v. Stenberg, _____Mont._____, 541 P.2d 60, 32 St.Rep. 864; Kenny v. Bridges, 123 Mont. 95, 208 P.2d 475.

The trial judge so found and there is substantial evidence to support his findings.

There was no evidence offered in support of an easement by implication, other than that when the Ingels acquired the property, the garage was there. The Ingels cite, in their brief, 25 Am Jur 2d Easements and Licenses, §28, a portion of which is quoted:

> "The basis of the general principle as to the impli-cation of an easement from a pre-existing use is the presumed or probable intention of the parties to the conveyance, as disclosed by all the circumstances surrounding the transaction. A presumption frequently invoked is that the parties contracted with a view to the condition of the property as it actually was at the time of the transaction. Whether an easement arises by implication, however, must depend upon such matters as the extended character of the user, the nature of the property, the relation of the separated parts to each, and the existing degree of necessity for giving such construction to the conveyance as will give effect to what may be supposed to have been, considering the manner of use, the reasonable intendment of the parties."

Here, not only was there no such evidence, but the trial judge personally viewed the premises.

The judgment of the district court is affirmed.

Hon. Robert S. Keller
District Judge, sitting for
Chief Justice James T. Harrison.

- 4 -

We Concur:

_Wesley Castles_

_John Conway Harrison_

_Gene B. Daly_

_Frank I. Haswell_
Justices.