No. 84-310

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

JAMES F. GRAHAM,

        Plaintiff and Respondent,

   -vs-

MARGARET E. MACK and MILFERD SIEFKE,

        Defendants and Appellants.

---

APPEAL FROM: District Court of the Nineteenth Judicial District,
In and for the County of Lincoln,
The Honorable Robert Holter, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Sverdrup & Spencer; Lawrence H. Sverdrup, Libby,
Montana

    For Respondent:

        Douglas & Bostock; Thomas R. Bostock, Libby, Montana

---

Submitted: October 11, 1984

Decided: December 31, 1984

Filed: DEC 31 1984

*Ethel M. Harrison*

Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

This is an appeal from an order quieting title to real property. Plaintiff instituted the action to quiet title and defendant answered claiming an easement of access, by prescription, implication or necessity over plaintiff's land. The District Court of the Nineteenth Judicial District, in and for Lincoln County, Montana, entered an order quieting title and denying defendant the easement. We affirm.

The following diagram will help in explaining the facts giving rise to this action:



Testimony at trial indicated that the following facts were not in substantial dispute. Dr. James F. Graham, plaintiff below and respondent herein, purchased land in Sections 26 and 35, Township 31 North, Range 31 West, M.P.M. from Charles Collingson in 1964 and 1966. In 1964, he purchased lot 9 in Collingson Tracts, a subdivided area in section 35. In 1966, he purchased fifteen acres in section 26. Running along the southern boundary of section 25, and the section 26 lot was an old railroad grade. At that time, the grade was overgrown with brush and not passable. It was occasionally used by hunters and others at various times of the year, but never on a continual basis, and was totally impassable to vehicular traffic in the winter. Graham occasionally put obstructions such as logs, cables or fences across the road to discourage its use.

In the early 1960's, Charles Collingson developed a subdivision, known as Collingson Tracts, in sections 35 and 36, adjacent to the section 26 lot. At that time, Collingson also owned the section 26 lot, but did not subdivide it.

Collingson had planned to develop the railroad grade along the southern edge of section 25 and the road that connected it to Highway 37 into an access road for lots 17-21, and reserved a sixty foot strip adjacent to lot 17 (cross-hatched on the map) to allow a road to be built into lots 22-25. The owner of the section 25 lot, Boothman, had given Collingson permission to develop the grade into a road because it had actually been used as such in years past. The section 26 lot had originally been purchased from the St. Regis Corporation by Collingson's parents in the 1930's. The Collingson family ran a school bus route on the grade until 1937. Subsequently, it had been used occasionally as a

3

shortcut to a nearby dump, by hunters and berry-pickers, and at least one logger.

In the early 1960's, Collingson actually did blade and gravel the portion of the grade in section 25, and did some work on the access road to Highway 37. The access road to Highway 37 (dark shaded area on the map) went across some Boothman land and some Forest Service land. It is very steep, and in the winter, virtually impassable. Around the same time, though, he abandoned the plan to build a road into lots 22-25. This he did because R.E. and Illa Roberts had bought all of the bottom lots (22-25) with the intention of buying the upper ones (17-21), and had indicated to Collingson that a road would not be necessary.

When Collingson sold the section 26 lot to Graham, both were aware of the sixty foot strip along lot 17. Graham specifically requested assurances that the section 26 portion of the grade was not to be used for a way of access to lots 17-25. Collingson assured Graham that no such access was intended. Nonetheless Graham, from 1966 on, continually put obstructions such as a fence and logs across the grade to prevent its use. The obstructions, though, would occasionally be moved and the grade used in the manner it had been before.

In 1977, Boothman sold the section 25 lot to the Macks. Along with the lot, they sold the Macks all their rights in the Forest Service road connecting the lot to Highway 37. In 1978, Mrs. Mack and Milferd Siefke, her son, purchased lots 19-22 from the Robertses, and held those lots as joint tenants. They moved onto the section 25 lot and from the beginning had difficulty getting into it. For three months of the year the road was impassable. The Macks began to come

4

in from the west, across Graham's lot; removing any obstructions that had been placed along it. They used Graham's lot in this manner until 1981.

In June of that year, Graham became aware of the Macks' use of the grade on his property. He was concerned that they were trying to ripen a prescriptive easement. To prevent that he had his attorney, William A. Douglas of Libby, Montana, write to the Macks demanding they stop using his property in that manner. Graham also had cables strung across the grade to prevent its use.

The next winter, in 1982, Mr. Sverdrup, the attorney for the Macks, contacted Graham. Sverdrup told him that the Macks were having great difficulty getting to their house with the grade on section 26 blocked as it was. Graham told Sverdrup that it was alright for the Macks to use the road that winter, but that it was not to be a permanent situation. Shortly thereafter, the cables came down, and Mrs. Mack had the grade across section 26 bladed and levelled. When Graham learned that Mrs. Mack had work done on the grade, he promptly hired a contractor to dig several large ditches across the road. Mack then had to get to her house by foot.

This action arose in 1983. Graham had attempted to sell the section 26 lot and lot 9 in the Collingson Tracts. A deal was almost reached, but the buyers balked when they became aware of the possible servitude on the land. The deal fell through, and Graham instituted this action to quiet title. He also asked for damages from Mrs. Mack for the lost sale. The action was filed against Mrs. Mack and Milferd Siefke, joint tenant with with Mrs. Mack in Collingson lots 19-22.

Mrs. Mack was personally served on January 30, 1984. Mr. Bostock, Graham's attorney, attempted to gain service on both Mack and Siefke through Mr. Sverdrup, her attorney. Siefke had move to Alaska to work and was difficult to locate. Despite repeated assurances to Bostock that he would accept service and file an answer, Sverdrup failed to do so. Default was had against Mrs. Mack on February 22, 1984. On March 8, 1984, Siefke was dismissed from the lawsuit and judgment was rendered against Mack upon her default on March 12, 1984. Four days after judgment had been entered, Mrs. Mack, through Mr. Sverdrup, moved to set aside the default and default judgment. Mr. Sverdrup also accepted service for both Mrs. Mack and Siefke by filing an answer and counterclaim. On the 21st of March, the District Court set aside the default, and also granted Mrs. Mack's motion that she be named guardian ad litem for the minor Siefke.

Trial was had on April 3, 1984, before the Honorable Robert M. Holter, District Judge, who heard evidence and viewed the area in dispute. In her answer and counterclaim, Mack alleged she had a right-of-way over Graham's land by a public prescriptive easement, or, alternatively, an easement by necessity. At the close of evidence, the District Court asked the parties to brief the legal questions presented by the evidence. On June 1, 1984, the District Court entered a judgment for Graham, quieting title in his favor, enjoining Mack from further use of Graham's property, and awarding damages.

From the judgment Mack appeals, citing the following as error:

(1) That the District Court erred in not finding a prescriptive public easement;

(2) That the District Court erred in not finding an easement by implication;

(3) That the District Court erred in not finding an easement by necessity; and

(4) That the District Court erred in awarding damages to Graham.

Graham raises by cross-appeal the following:

(1) That the District Court erred in vacating the default judgment.

We will address Graham's specification of error first.

A District Court may, within its discretion, vacate a previously entered default judgment. It is given that power by Rule 55(c) of the Montana Rules of Civil Procedure, which states: "For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b). . . " Rule 60(b) provides, in pertinent part: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect. . . "

This Court has consistently ruled that a determination to set aside a default judgment is within the sound discretion of the trial court, to be determined on a case by case basis, Williams v. Superior Homes, Inc. (1966), 148 Mont. 38, 417 P.2d 92. Although it is clear that much of the delay leading to the entry of default was attributable to Mr. Sverdrup's inattention to the case, his affidavit in support of setting aside the default provided the District Court adequate grounds to do so. Sverdrup stated that some of the delay was caused by his efforts to contact the minor Siefke,

7

who was, according to the affidavit, living in Washington state at the time; and to have Mrs. Mack appointed his guardian. Sverdrup also stated that he had no knowledge that Mrs. Mack had been served directly because she did not tell him that she had, and that the reason she failed to do so was her belief that Mr. Sverdrup would take care of it. He finally stated that Mrs. Mack would be able to present a defense and good cause of action should the default and judgment be set aside.

It appears from a review of the record that Mr. Sverdrup could have easily acted to prevent the default. But, we have moved away from the rule that a client is absolutely responsible for her attorney's neglect. Lords v. Newman (Mont. 1984), 688 P.2d 290, 41 St.Rep. 1793. Furthermore, we will not overturn a District Court order setting aside a default unless the order amounts to a manifest abuse of discretion. Lords v. Newman, 688 P.2d at 294, 41 St.Rep. at 1497. There are in Mr. Sverdrup's affidavit, grounds to overturn the default, and that order must stand.

We next move to the District Court's order quieting title and denying Mack any easement or right-of-way on Graham's land. Our review of the District Court's findings must be governed by the principles enunciated in Rule 52(a), M.R.Civ.P.:

> ". . . Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. . . "

See also Bauer v. Cook (1979), 182 Mont. 221, 596 P.2d 200. Thus, this Court's function on appeal is simply to determine whether there is substantial evidence to support the District

8

Court's findings, and we will not reverse them unless there is a clear preponderance of evidence against them. See Taylor v. Petranek (1977), 173 Mont. 433, 568 P.2d 120, and cases cited therein. With this in mind, we turn to the substantive issues.

Mack first contends that a prescriptive easement exists in her favor. Prescriptive easements may be public or private, depending upon the user, but in either case, the party claiming the right must: "show open, notorious, exclusive, adverse, continuous and uninterrupted use of the easement claimed for the full statutory period." Thomas v. Barnum (Mont. 1984), 684 P.2d 1106, 41 St.Rep. 1266, quoting from Taylor v. Petranek (1977), 173 Mont 433, 568 P.2d 120; see also 2 Thompson on Real Property (1980 ed.) §342. The statutory period required is five years, section 70-19-401, MCA.

Mack points out the use of the grade as a school bus road in the 1930's and occasional use by hunters, loggers and berry-pickers in support of her claim of a prescriptive public easement. The District Court found that any use of the railroad grade "was not continuous. . . was interrupted and was not adverse for any period of five years or more." Similar findings have been upheld in the past. In Medhus, Williams & Reddig v. Dutter & Deutsch (1979), 184 Mont. 437, 603 P.2d 669, the Court found in the record "occasional use of the road by hunters, hikers and neighbors cutting Christmas trees and gathering firewood." Medhus, 184 Mont. at 443, 603 P.2d at 672. This type of occasional use was held insufficient to raise a presumption of adverse use. See also Taylor v. Petranek (1977), 173 Mont. 433, 568 P.2d 120; Harland v. Anderson (1976), 169 Mont. 447, 548 P.2d 613; and

9

Ewan v. Stenberg (1975), 168 Mont. 63, 541 P.2d 60. ("Occasional use by hunters, by sightseeing friends and by neighbors visiting neighbors falls short of the extent and type of usage necessary to result in the assertion of a public use." 168 Mont. at 68, 541 P.2d at 63.) By way of contrast, situations where public easements have been found and upheld involve the assertion of public use by acts such as public maintenance of a road, Kostbade v. Metier (1967), 150 Mont. 139, 432 P.2d 382, or the laying of a pipeline, Riddock v. City of Helena (Mont. 1984), 687 P.2d 1386, 41 St.Rep. 1817. And finally, it is very clear that the Collingsons' use of, at that time, their own land for the school bus route cannot be used to establish any public right.

Next Mack contends that the District Court erred in not finding an easement by implication. Mack raises this issue because of her ownership of lots 19-22 of the Collingson Tracts, hoping to "bootstrap" herself into access across Graham's land. Graham contends that Mack did not argue this below, and thus should be precluded from doing so now, citing Chamberlain v. Evans (1979), 180 Mont. 511, 591 P.2d 237. Easements by implication arise when it is necessary to effect a presumed intent on the part of parties to a deed. 2 Thompson on Real Property (1980 ed.), §351. The evidence presented at trial brought into question the parties' intent, and at the close of evidence, the court asked the parties to brief the various legal theories on which access could be found. Here, the evidence, and the District Court, put the parties' intent in issue, and it is properly raised on appeal.

The doctrine of easement by implication is relatively new to this state. We first recognized it in Thisted v. Country Club Tower Corp. (1965), 146 Mont. 87, 405 P.2d 432, which overruled the case of Simonson v. McDonald (1957), 131 Mont. 494, 311 P.2d 982. See also 19 Mont.L.Rev. 73 (1957). Simonson had held that implied easements by necessity did not exist in Montana because condemnation was present as an alternative, see State v. Cronin (1978), 179 Mont. 481, 587 P.2d 395. Subsequent cases have abandoned the Simonson rule, see Ingels v. Mickalson (1976), 170 Mont. 1, 549 P.2d 459; Godfrey v. Pilon (1974), 165 Mont. 439, 529 P.2d 1372. Though the doctrine is new to this state, one of the common threads running through the cases where it is at issue was stated most recently in Goeres v. Lindeys, Inc. (Mont. 1980), 619 P.2d 1194, 37 St.Rep. 1846, where we explained:

> "[E]ach case must be examined after an examination of the particular facts and circumstances. Additionally, any implied negative easements as to a particular lot are to be considered with extreme caution since an action results in depriving a person of the use of his property by imposing a servitude through mere implication." (Emphasis in original.) 619 P.2d at 1197, 37 St.Rep. at 1850.

We went on to emphasize the necessity of knowledge—of the use or its necessity—in presuming intent, 619 P.2d at 1197, 37 St.Rep. at 1850. With this admonition in mind, we turn to the common law as stated by Thompson. To find an implied easement:

> "over the property of another, there must have been a separation of title, and a use before the separation took place which continued so long and was so obvious or manifest as to show that it was meant to be permanent, and it must appear that the easement is necessary to the beneficial enjoyment of the land granted or retained." 2 Thompson on Real Property (1980 ed.), §351.

11

It must be remembered that Mack can only forward this argument because of her ownership of lots 19-22. Otherwise, the first element, unity of ownership, would not be met. Nowhere in the record is it suggested that Collingson ever owned the section 25 lot, or that the lot was ever under unified title with the adjacent lands. In that light, Collingson's intent on selling the section 26 lot to Graham is important, because, at that time, he was still the owner of Collingson Tracts lots 17-23. He testified that he intended to gain access to lots 17-25 via the Forest Service road and Boothman's land on section 25. He had Boothman's permission to do so, and did some work on that road to that end. Collingson and Graham both testified to their understanding that section 26 was not to be used for access. Finally, any use of the road on section 26, up to the time of severance, to gain access to any of Collingson's other land cannot be considered "obvious or manifest" enough to raise any presumption, or even question, of contrary intent.

Next, Mack contends the District Court erred in not finding an easement by necessity. An easement by necessity is a sub-species of implied easements. They are distinguished in the sense that implied easements are based upon a contract that is "open and visible at the time of conveyance," Godfrey v. Pilon (1974), 165 Mont. 439, 446, 529 P.2d 1372, 1376. A way of necessity depends solely upon "strict necessity" at the time of conveyance and is, in that sense, more truly an implied use. State v. Cronin 179 Mont. at 488, 587 P.2d at 399-400. The way of necessity arises when the strong public policy "against shutting off a tract of land and thus rendering it unusable" gives rise to a fictional intent defeating any such restraint, 2 Thompson on

Real Property (1980 ed.) §351. The result is the imposition of a way upon the land of the grantor, and will only arise in very specific circumstances, see Schmid v. McDowell (Mont. 1982), 649 P.2d 431, 39 St.Rep. 1313. Goeres v. Lindeys, Inc., supra. State v. Cronin, supra. In Schmid, we stated the general rule:

> "[W]here an owner of land conveys a parcel thereof which has no outlet to a highway except over the remaining lands of the grantor or over the lands of strangers, a way of necessity exists over the remaining lands of the grantor." 649 P.2d at 433, 39 St.Rep. at 1316. (Citing cases.)

There are two basic elements (1) unity of ownership; and (2) strict necessity. The necessity must exist at the time the unified tracts are severed, State v. Cronin (1978), 179 Mont. at 488, 587 P.2d at 399. The way granted must be over the grantor's land, and never over the land of a third party or stranger to the title, Schmid v. McDowell 649 P.2d at 433, 39 St.Rep. at 1316. And, finally, there must have been strict unity of ownership, Schmid v. McDowell, supra; Montana Wilderness Association v. United States Forest Service (D. Mont. 1980), 496 F.Supp. 880; 2 Thompson on Real Property (1980 ed.), §362.

The record does not support the imposition of a way of necessity in the case. First, as to Mrs. Mack's section 25 lot, there is no evidence in the record that even suggests that it was ever under a common ownership--a unity of title --with the adjoining property. And, as to Mack's lots 17-22, the unity of ownership element also is absent. Mrs. Mack bought those lots from R.E. and Illa Roberts; Graham bought his lots from Collingson. The unity required in this case is strict; it makes no difference that Collingson was the

original owner of lots 19-22. There is no unity of grantor. Graham's purchase of the section 25 lot occurred in 1966; Mack's purchase was in the late 1970's--there is no unity of time. At no time after Graham's purchase of the section 25 lot did Collingson have the power under this doctrine to grant any easement across Graham's land. By the time Mack acceded to title in lots 17-22, Graham was a complete stranger to that title, and not subject to any easement across his land for the benefit of those lots.

As the last issue, Mack contends that the District Court was in error awarding damages to Graham. We have examined the record and have noted that Graham specifically put into evidence the damages he suffered by way of Mack's wrongful use of his land. The District Court had ample evidence on which to base an award of damages. The orders of the District Court are therefore affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

14