No.  92-255

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

MARTI L. WANGEN,

       Plaintiff, Counterdefendant
          and Appellant,

-vs-

MICHAEL B. KECSKES,

       Defendant, Counterclaimant
          and Respondent.


APPEAL FROM:   District Court of the Fourteenth Judicial District,
               In and for the County of Meagher,
               The Honorable Roy Rodighiero, Judge presiding.


COUNSEL OF RECORD:

       For Appellant:

          Gregory W. Duncan; Harrison, Loendorf & Poston,
          Helena, Montana

       For Respondent:

          William F. Hooks; Hooks Law Firm, Townsend, Montana

**FILED**

JAN 5  1993

Filed;

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  November 5, 1992

Decided:  January 5, 1993

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the Fourteenth Judicial District, Meagher County, the Honorable Roy C. Rodeghiero presiding. Appellant Marti Wangen (Wangen) appeals an order granting summary judgment to respondent Michael Kecskes (Kecskes) and declaring that he has an easement by implication and by necessity on a road crossing Wangen's property in Meagher County. We affirm.

Wangen and Kecskes own adjoining tracts of real property in Sections 8 and 9, respectively, in Township 9 North, Range 8 East, M.P.M. Until 1972, these tracts were part of a cattle ranch owned by Alfred Edwards (Edwards). The Edwards ranch comprised approximately 4,400 acres on hilly terrain cut by timbered ravines. In 1972, Edwards sold over 4,000 acres to Frank Murphy (Murphy), reserving a 320-acre tract along Fourmile Creek at the west end of the original ranch. In 1988, he conveyed this reserved tract to Wangen, his granddaughter.

Murphy conveyed all but 240 acres of his portion of the ranch to Townsend Ranch, Inc., a Montana corporation, in 1975. The 240-acre reserved tract was at the west end of Murphy's land, east of and adjacent to the 320-acre tract now owned by Wangen. In 1984, Murphy sold 220 acres of this tract to Kecskes. Two years later, he sold the remaining 20 acres to Mark Scott, who in turn sold it to Sandra Gould, the owner at the time these proceedings commenced. Gould's parcel abuts the common boundary between the Kecskes and Wangen tracts and is otherwise surrounded by the Kecskes property.

A U.S. Forest Service road (the Fourmile Road) runs along the

2

west edge of Wangen's tract, connecting it with U.S. Highway 12 east of White Sulphur Springs. This road existed in 1972, when Edwards sold 4,000 acres of his ranch to Murphy. No other known public road crossed the ranch in 1972, though a dirt road linking the east portion of Murphy's purchase to the Fourmile Road is shown on U.S. Forest Service maps. This road, known to the parties as the Coal Bank Road, also existed in 1972.

The subject of this controversy is an unimproved single-track road that connects the Fourmile Road with Gould's 20-acre lot. It crosses Wangen's property from west to east, passing through Kecskes' land to terminate at Gould's cabin. Murphy attested to the existence of this road in 1972, and to his use of it for motor vehicle access and for trailing cattle, from the time that he bought the land. In his affidavit he said:

> The connecting road between the Fourmile Forest Service Road and the 220 acre parcel was necessary to use and enjoy the 220 acre parcel subsequently sold to Mr. Kecskes. . . . In June, 1972, when I purchased the [220 acre] parcel from Alfred M. Edwards, there was no outlet to a public road or highway from that parcel, except over the remaining property retained by Mr. Alfred Edwards, or over the lands of strangers.

Edwards stated that he had occasionally used the road for fixing fence and cutting poles, but that to his knowledge, Murphy had used it on only one occasion, for cutting timber. On that occasion Edwards had refused to allow logging trucks on the road, though he had, he said, "granted permission" for the cutters to use it.

On July 25, 1986, Edwards granted Sandra Gould an easement on the road, under an agreement that it would remain in its present

3



Coal Bank Road

KECSKES

Gould

WANGEN

PROPERTY OF MARTI WANGEN, MIKE

KECSKES AND SANDRA GOULD, 1992

unimproved condition and would not be graded. Kecskes had asked for a similar easement in 1984, before he bought the 220-acre parcel from Murphy, but Edwards had refused. Instead, he and Kecskes signed a "Memorandum of Agreement" in which Edwards agreed to allow Kecskes and his family access to the 220-acre parcel through Edwards' land in exchange for Kecskes allowing water access for Edwards' cattle. By its terms, the 1984 agreement was to remain in effect as long as Kecskes owned the 220 acres. Two weeks after Edwards and Kecskes signed this agreement, Kecskes purchased the land from Murphy.

In his 1991 affidavit, however, Edwards stated that he believed that the 1984 agreement was merely a license and that it was "terminable" at the time he conveyed his 320-acre parcel to Wangen. Wangen herself views the agreement as a "limited conditional permissive agreement." In 1990, Kecskes asked her for an easement similar to the one Edwards had given Gould, but she refused. Through counsel, however, she has indicated that she would be willing to give Kecskes a license.

This case originated as Wangen's action to quiet Kecskes' claim to an easement on the road crossing Wangen's property. Both parties moved for summary judgment, which the District Court granted in favor of Kecskes. On appeal, Wangen presents the following issues:

1. Whether the District Court erred in finding that Kecskes has an easement by implication.

2. Whether the District Court erred in finding that Kecskes has an easement by necessity.

4

3. Whether the District Court erred in finding that Kecskes' claim or right to an easement was not extinguished under § 70-17-111, MCA.

4. Whether the District Court erred in granting summary judgment in favor of Kecskes.

Kecskes argues that the only issue is whether the District Court erred in granting summary judgment. Because the District Court granted summary judgment on the basis of its finding that Kecskes had an easement by implication and by necessity, we address the issues of easement by implication and its extinguishment. As these issues are dispositive, we do not address the issue of easement by necessity.

I

Does Kecskes have an easement by implication?

An implied easement rests on the "implied intent of the parties gathered from the circumstances surrounding the conveyance." Woods v. Houle (1988), 235 Mont. 158, 162, 766 P.2d 250, 253. See also Graham v. Mack (1985), 216 Mont. 165, 173, 699 P.2d 590, 595 (an easement by implication arises when it is necessary to effect a presumed intent on the part of parties to a deed). We have emphasized that an implied easement is to be considered with extreme caution, because it imposes a servitude through mere implication. Woods, 766 P.2d at 253; Graham, 699 P.2d at 596, citing Goeres v. Lindeys, Inc. (1980), 190 Mont. 172, 619 P.2d 1194. The following elements must be satisfied: (1) separation of title; (2) a long-standing, obvious use before the separation, which shows that the use was meant to be permanent; and (3) necessity of the easement for beneficial enjoyment of the land

5

granted or retained.  Graham, 699 P.2d at 596.

Here, the first element is satisfied because Edwards is the original grantor of the Wangen and Kecskes parcels.  Separation occurred in 1972, when Edwards conveyed all but 320 acres of his land to Murphy.  The second element is satisfied because Edwards used the road at issue before 1972, for access to the land now owned by Kecskes, and because use of the road, in 1972 as now, was obvious, visible, and appeared to be permanent.  The third element is satisfied because the road offered the only practical access to the west end of the property Murphy bought in 1972.

Murphy stated in a 1991 affidavit that both he and Edwards had used the road for access to the land subsequently sold to Kecskes, and that in 1972 the road was the only outlet to a public road from that land.  Wangen argues that Edwards never intended to give Murphy an easement, but Edwards' 1991 affidavit does not describe his intention at the time of the 1972 conveyance to Murphy.  It does imply that he expected Murphy to use the road in such a way as not to damage his (Edwards') property.  He had refused access to logging trucks, he said, because they would "tear up the property;" presumably he had accepted cutters because they would not.  This statement suggests that Edwards and Murphy intended an easement for purposes associated with cattle-raising and that using the road for logging trucks would have expanded the easement beyond the use contemplated at the time of the 1972 conveyance.

We hold that Murphy acquired an easement by implication on the road over Edwards' property when he bought 4,000 acres from Edwards

6

in 1972. In the absence of any act on the part of Murphy or Edwards that extinguished that easement, it passed to Kecskes with title to the 220-acre tract at the west end of the property Murphy bought from Edwards. Section 70-20-308, MCA.

## II

Was Kecskes' claim or right to an easement extinguished under § 70-17-111(3), MCA?

Section 70-17-111(3) provides that a servitude is extinguished by "the performance of any act upon either tenement by the owner of the servitude or with his assent that is incompatible with its nature or exercise." Wangen argues that Murphy extinguished any claim he might have had to an easement across Edwards' land by asking Edwards for permission to use the road for logging purposes. The District Court determined, and we agree, that this single act does not rise to the type of act or omission sufficient to constitute an extinguishment of the easement.

To support her argument, Wangen cites Downing v. Grover (1989), 237 Mont. 172, 772 P.2d 850. In Downing, we held that asking permission to use a road across another's property is inconsistent with a prescriptive easement, which requires open, notorious, adverse, and continuous use. The plaintiff, Downing, and his predecessor in interest had gained access to the plaintiff's property through a locked gate and a road across the defendants' property. The Grovers allowed access to anyone who asked, but Downing used the road only once, in connection with his lawsuit. Here, no claim has been made that Murphy established a

7

prescriptive easement, with which permissive use is inconsistent. See Keebler v. Harding (1991), 247 Mont. 518, 521, 807 P.2d 1354, 1356 (existence of a prescriptive easement depends on whether historical use of road was adverse or permissive).

Wangen goes on to argue that Kecskes' request for an easement from Edwards also was inconsistent with an easement and is evidence that Kecskes bought the property knowing that he had no easement. She characterizes the agreement Edwards and Kecskes signed in 1984 as a "permissive license" and argues that it is incompatible with possession of an easement.

A license is the permission or authority to do a particular act or series of acts upon another's land without possessing an interest therein. It is revocable at the will of the servient tenement. Kuhlman v. Rivera (1985), 216 Mont. 353, 357, 701 P.2d 982, 984-85. Kecskes' 1984 agreement with Edwards, by its express terms, gives him access to his 220-acre parcel across Edwards' land as long as Kecskes owns the land. It is not, as Wangen contends, "revocable" if "certain terms and conditions are not met" but is conditioned only on Kecskes allowing Edwards' cattle access to water on the 220-acre parcel. Although Wangen's lawyer stated that Edwards has never used this water, no suggestion has been made that Kecskes breached the condition. Because the agreement is not revocable at the will of the servient tenement (Edwards'), it is not a license.

Finally, Wangen argues that Kecskes' attempt to obtain an easement from her is incompatible with prior possession of an

8

easement and indicates that Kecskes knew his agreement with Edwards was not an easement. While it is obvious that the Edwards-Kecskes agreement was not an easement--if it were, it could not be terminated when Kecskes sold the land--we have no evidence that Kecskes knew that Murphy had an implied easement or that his own access was assured by that easement. Kecskes' deed for the 220-acre parcel includes "all easements . . . providing access" but without covenants of warranty. Kecskes' effort to secure written confirmation of access is understandable in light of his lack of documentation from Murphy and Wangen's opposition to his use of the road.

We held in City of Billings v. O. E. Lee Co. (1975), 168 Mont. 264, 542 P.2d 97, that the city's purchase of an easement in 1944 for a right of way that had been conveyed to the city in 1885 did not extinguish the 1885 easement. Here, Kecskes' effort to obtain documentation of the easement that already existed by implication did not extinguish that easement.

## III

Did the District Court err in granting summary judgment to Kecskes?

Our standard of review for a grant of summary judgment is the same as that initially applied by the trial court under Rule 56, M.R.Civ.P. Mayer Bros. v. Daniel Richard Jewelers, Inc. (1986), 223 Mont. 397, 726 P.2d 815. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

9

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P.

The party moving for summary judgment has the initial burden of showing that "there is no genuine issue as to any fact deemed material in light of the substantive principles that entitled the movant to judgment as a matter of law." Fleming v. Fleming Farms, Inc. (1986), 221 Mont. 237, 241, 717 P.2d 1103, 1105-1106. Once the movant has met this burden, the party opposing the motion must show "by present facts of a substantial nature that a material fact issue does exist. Mere conclusory or speculative statements are insufficient to raise a genuine issue of material fact." Mayer Bros., 726 P.2d at 816 (citations omitted).

Here, the District Court determined that the pleadings, the discovery propounded by Kecskes, and the affidavits established that the material facts of this case are not in dispute. Both parties agreed that Edwards had been the sole owner of both Wangen's and Kecskes' parcels and that severance of title occurred in 1972; that the Fourmile Road existed as a public road at the time of severance of title; that the single-track dirt road crossing Edwards' property also existed at the time of severance of title and was open, visible, and in use for ranching purposes at that time.

The court also determined that the affidavit, maps and photographs submitted by Kecskes established that at the time of severance of title, the land now owned by Kecskes had no outlet to

10

a public road except over the property retained by Edwards, and that the road in question was then and still is necessary to beneficial enjoyment of the land now owned by Kecskes.

Wangen submitted affidavits from her mother, Sue Weingartner (Edwards' daughter), stating that she was not aware of geographical barriers preventing access to Kecskes' land from the Coal Bank Road. Because the Coal Bank Road does not provide access to Kecskes' land, this testimony is irrelevant. Further, as the District Court observed, Wangen offered no evidence that Weingartner had personal knowledge of the feasibility of road construction over the land north and east of Kecskes' property, or that she was competent to testify on such matters. Her testimony, therefore, does not meet the standard of Rule 56(e), M.R.Civ.P., which provides that affidavits filed in opposition to a motion for summary judgment "shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Because they do not meet this standard, Weingartner's affidavits do not raise a genuine issue of material fact.

In short, the undisputed facts show that the road across Edwards' land was the only means of access to the Fourmile Road from the property now owned by Kecskes, and that the elements of an easement by implication were present when severance of title occurred in 1972. Kecskes is entitled to judgment as a matter of law.

11

AFFIRMED.

_John Conway Harrison_
Justice

We concur:

_J. H. Turnage_
Chief Justice

_Karla M. Gray_

_William E. Hunt_

_R. C. McDonough_
Justices

12

January 5, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

John P. Poston & Gregory W. Duncan
Harrison, Loendorf & Poston
2225 Eleventh Ave., Ste. 21
Helena, MT   59601

William F. Hooks
Hooks Law Firm
P.O. Box 1289         & Appellate Defenders Office
Townsend, MT   59644      Helena

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
    Deputy