No. 01-157

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 265N

GARY E. COLLINS,

Plaintiff and Respondent,

v.

KEITH R. and MARIE E. SWINGER,

Defendants and Appellants.

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Keith R. and Marie E. Swinger (pro se), Missoula, Montana

For Respondent:

David L. Pengelly, Attorney at Law, Missoula, Montana

Submitted on Briefs: June 21, 2001
Decided: December 17, 2001

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 The Respondent, Gary Collins, brought this action in the District Court for the Fourth Judicial District in Missoula County for injunctive relief enjoining the Appellants, Keith and Marie Swinger, from interfering with his ditch easement which is located in part on the Appellants' property. The Swingers counterclaimed to enjoin Collins from further trespass onto their land, for an order to permanently remove the diversion point, and for damages incurred as a result of Collins' wrongful occupation of their property. Following a non-jury trial, the District Court entered its Findings of Fact, Conclusions of Law, and Order awarding Collins injunctive relief, damages, and attorney's fees. The Swingers appeal the judgment of the District Court. We affirm the District Court and remand for a determination of costs and attorney's fees.

¶3 The issues on appeal are not easily identifiable. Appellants, acting *pro se*, raise forty-eight issues for review. After eliminating issues previously adjudicated in the Water Court [1], eliminating those issues which do not satisfy the requirements of Rule 23(a)(4), M.R. App.P.[2], reviewing the District Court record, and reviewing arguments within the Appellants' briefs, we have identified the following issues on appeal:

¶4 1. Did the District Court err when it concluded a ditch easement by implication exists over the Swingers' property?

¶5 2. Did the District Court err when it concluded § 70-17-112, MCA, includes easements by implication?

¶6 3. Did the District Court err when it adopted Collins' proposed Findings of Fact?

## FACTUAL BACKGROUND

¶7 From the outset of litigation, Gary Collins and Keith and Marie Swinger have disputed two issues. First, the parties disagree about who owns what water rights from Hayes Creek, a tributary of the Bitterroot River in Missoula County, Montana. Second, Collins claims that the Swingers have interfered with his ditch easement from Hayes Creek and his statutory secondary easement to walk the ditch to the diversion point on the Swingers' property in order to repair, maintain, and regulate the flow of water.

¶8 The water rights issue was settled on July 17, 1998, in Case No. 76HE-11 before the Montana Water Court, and affirmed by this Court on August 30, 1999. *In re Adjudication of Existing Water Rights (Swinger v. Collins)*, 1999 MT 202, 295 Mont. 447, 984 P.2d 151. The Water Court affirmed Collins' ownership of an irrigation water right, claim no. W-118461, from Hayes Creek, with a diversion point located on the Swingers' property. Furthermore, the Court determined that Collins' water right has a priority date of June 19, 1881, while the Swingers' water right, claim no. W000101, has a priority date of December 31, 1958. This Court affirmed the Water Court, in large part due to the Swingers' failure to attend the Water Court hearing, and imposed sanctions for a frivolous appeal. *In re Adjudication of Existing Water Rights (Swinger v. Collins)*, ¶¶ 41-42.

¶9 With the water rights issue settled, the issue presented to the District Court was whether Collins had a ditch easement across the Swingers' property and, if so, whether the Swingers wrongfully interfered with that easement and caused Collins' damages.

¶10 Collins' water right is diverted from Hayes Creek through a ditch located a couple of feet inside the Swingers' property line. To maintain the diversion dam in Hayes Creek, Collins must enter the Swingers' property where Collins' ditch intersects Hayes Creek. In a Water Resources Survey of Missoula County dated 1960, the ditch used by Collins is referred to as the Warnath-McMahon ditch. The Warnath-McMahon ditch leaves the Swingers' property after a couple of feet, continues across the property of two other landowners, crosses under Hayes Creek Road, and enters Collins' property.

¶11 Until the early 1990s, Collins used a gate in the fence running along the north boundary of the Swingers' property to access his diversion point. In approximately 1993, the Swingers removed the gate, impeding Collins' access to and control of his diversion point. In May 1996, the Swingers notified Collins that they were denying Collins further access to the diversion point. Since 1996, the Swingers have prohibited Collins' access to the diversion point, and Collins has been unable to control the water flow to his property.

¶12 Prior to the water right dispute, the Swingers had not challenged Collins' claim of an easement across their property, stating in a letter dated June 11, 1994, to the Missoula Regional Office Manager of the Department of Natural Resources and Conservation (DNRC), "we have never argued the fact there was an easement on our property for diversion to either McMahon, Brewer or Collins" and "Mr. Collins does not have a case to pursue, as his 'ditch easement' has NOT been denied...."

¶13 Collins' and Swingers' properties were under common ownership from the 1920s until 1948, when Albert and Anna Bakke conveyed 33.4 acres of their property to Harvey and Viola Mae Goff, Collins' predecessors in interest. The Bakkes later sold their other property sections to Julian and Alma Reed in separate transactions in 1949 and 1956. The Reeds, in turn, conveyed their interest to R.E. and Yvette Wirth. The Swingers purchased their property from the Wirths in 1958.

¶14 The Warnath-McMahon ditch was visible and in apparent use when the Bakke property was severed in 1948, and has been in continuous use since 1948. The ditch is visible in aerial photographs taken in both 1937 and 1955.

¶15 Since 1948, no deed in the chain of title of either Collins or the Swingers indicates an intent of predecessors to terminate or restrict the ditch use rights of either Collins or his predecessors.

¶16 On December 5 and 6, 2000, the District Court conducted a non-jury trial. On December 12, 2000, the District Court entered its Findings of Fact, Conclusions of Law, and Order. The District Court ordered that Collins may enter the Swinger property pursuant to his water right for reasonable maintenance of the diversion, prohibited the Swingers from impairing Collins' use of his superior water right, and ordered the Swingers to pay attorney's fees pursuant to § 70-17-112(5), MCA. Additionally, Collins was awarded actual damages in the amount of $2,317.00 to compensate for reductions in hay production caused by the Swingers' deliberate interference with Collins' irrigation ditch. The Swingers' counterclaim was denied.

¶17 On January 31, 2001, the Swingers appealed the District Court's Findings of Fact, Conclusions of Law and Order of December 12, 2000.

## STANDARD OF REVIEW

¶18 Our standard of review for a district court's findings of fact is set forth in Rule 52(a), M.R.Civ.P., which provides in part, "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." To interpret Rule 52(a), we have adopted a three-part test. First, the Court will review the record to see if the findings are supported by substantial evidence. Second, if the findings are supported by substantial evidence, we will determine if the trial court has misapprehended the effect of the evidence. Third, if substantial evidence exists and the effect of the evidence has not been misapprehended, this Court may still determine a finding clearly erroneous if a review of the record leaves the court with "a definite and firm conviction that a mistake has been committed." *Wareing v. Schreckendgust* (1996), 280 Mont. 196, 202, 930 P.2d 37, 41.

¶19 The standard of review of a trial court's conclusions of law is whether the trial court's interpretation of the law is correct. *Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.

## ISSUE 1

¶20 Did the District Court err when it concluded a ditch easement by implication exists over the Swingers' property?

¶21 With the Water Court's determination that Collins owned a water right on Hayes Creek senior to that of the Swingers' water right, the remaining issues before the District Court were whether Collins had a ditch easement across Swingers' property and whether the Swingers wrongfully interfered with that easement in violation of § 70-17-112, MCA. To get to the second issue, the District Court had to determine whether an easement existed. Collins claimed his ditch easement arose by implication in 1948 when both parties' properties were held by a common grantor and the ditch was in place to convey water to land that was ultimately severed. The Swingers, on the other hand, contend that a deed delivered prior to 1948, between George Bennett and Bakke in 1945, extinguished all ditches and canals.

¶22 In its Findings of Fact, the District Court determined the ditch was in use at the time the common ownership was terminated in 1948, and that the ditch had continually been used to convey water to Collins and his predecessors since 1948. Therefore, the requisite elements necessary to establish an easement by implication were satisfied. We agree with

the District Court.

¶23 An easement by implication arises when it is necessary to effect a presumed intent on the part of parties to a deed. *Graham v. Mack* (1985), 216 Mont. 165, 173, 699 P.2d 590, 595. To establish an easement by implication, three elements must be satisfied: (1) separation of title; (2) a long-standing, obvious use before the separation, which shows that the use was meant to be permanent; and (3) necessity of the easement for the beneficial enjoyment of the land granted or retained. *Wangen v. Kecskes* (1993), 256 Mont. 165, 169, 845 P.2d 721, 724; *Graham*, 216 Mont. at 174, 699 P.2d at 596. An easement by implication is created by operation of law at the time of the severance. *Albert G. Hoyem Trust v. Galt*, 1998 MT 300, ¶ 17, 292 Mont. 56, ¶ 17, 968 P.2d 1135, ¶ 17.

¶24 Applying the elements of an implied easement to the facts found by the District Court, we agree that an easement by implication arose in 1948. The first element was satisfied when Bakke, who held both the Collins and Swinger parcels, severed unity of title by selling a portion of his property to Goff. The second element was satisfied when substantial evidence established that the ditch was in existence as of 1937, at the severance of the Bakke property in 1948, and has continued in use by Collins and his predecessors to the present. Furthermore, no evidence established an abandonment of the ditch easement, and the Swingers themselves recognized the existence of the ditch soon after their purchase of the property in 1958. The third element was satisfied because the ditch is essentially the means by which Collins can access water for irrigation of his land and, therefore, it is necessary for his beneficial enjoyment of the land.

¶25 Furthermore, after reviewing the entirety of the record, we hold the District Court's Findings of Fact are supported by substantial evidence and are not clearly erroneous. From the testimony of the water resources specialist from the Department of Natural Resources and Conservation to the aerial photographs of the ditch in 1937 and 1955, we are satisfied that neither has the evidence been misapprehended nor has a mistake been made by the District Court.

¶26 The Swingers' primary contention is that no easement by implication arose because in 1945, prior to the 1948 severance, a deed from George Bennett to Bakke, in which Bakke acquired the land later severed, extinguished all ditch easements. However, the Swingers fail to recognize that the transfer of property from Bennett to Bakke was not the severance which created the easement by implication. The ditch at issue remained under the control of a common owner upon the conveyance from Bennett to Bakke. Therefore, no ditch

easement existed in 1945 to extinguish.

¶27 We are satisfied that substantial evidence exists to support the District Court's findings, and conclude the District Court did not err in its conclusion that an easement by implication was created.

## ISSUE 2

¶28 Did the District Court err when it concluded § 70-17-112, MCA, includes easements by implication?

¶29 The Swingers contend that § 70-17-112(4), MCA, which prohibits interference with ditch easements, is limited in scope to those easements acquired by prescription or conveyance.

¶30 Section 70-17-112, MCA, provides:

**Interference with canal or ditch easements prohibited.**

(1) A person with a canal or ditch easement has a secondary easement to enter, inspect, repair, and maintain a canal or ditch.

(2) No person may encroach upon or otherwise impair any easement for a canal or ditch used for irrigation or any other lawful domestic or commercial purpose, including carrying return water.

(3) The provisions of subsection (2) do not apply if the holder of the canal or ditch easement consents in writing to the encroachment or impairment.

(4) Each canal or ditch easement obtained *by prescription or conveyance is* included within the scope of this section. Nothing in this section establishes a secondary easement where none existed prior to April 14, 1981. This section does not affect contracts or agreements concluded prior to April 14, 1981.

(5) If a legal action is brought to enforce the provisions of this section, the prevailing party is entitled to costs and reasonable attorney's fees. [Emphasis added.]

¶31 The District Court correctly concluded that § 70-17-112(4), MCA, is not a limit on the

types of easements covered by the statute but rather a non-exclusive list of the easements to which the statute applies. Easements by implication are recognized in Montana and, like any other legally recognized easement, are protected from interference by § 70-17-112, MCA. Therefore, we conclude that the District Court correctly applied § 70-17-112, MCA, to Collins' easement by implication.

## ISSUE 3

¶32 Did the District Court err when it adopted Collins' proposed Findings of Fact?

¶33 The Swingers argue that the District Court erred when it adopted Collins' proposed Findings of Fact "verbatim" in the December 12, 2000, Order.

¶34 "When reviewing the adequacy of findings of fact . . . we examine whether they are sufficiently comprehensive and pertinent to provide a basis for a decision, and whether they are supported by substantial evidence." *In re Marriage of Nikolaisen* (1993), 257 Mont. 1, 5, 847 P.2d 287, 289.

¶35 We hold, as we did when deciding Issue 1, that the District Court's findings are based on substantial evidence, and are not clearly erroneous. Therefore, the District Court did not err by their adoption.

¶36 As a final matter, Collins requests this Court to award his costs and attorney's fees incurred on appeal as the prevailing party pursuant to § 70-17-112(5), MCA. A party who successfully enforces the provisions of § 70-17-112, MCA, is entitled to costs and reasonable attorney's fees, including those fees incurred successfully by pursuing or responding to an appeal. *Sharon v. Hayden* (1990), 246 Mont. 186, 190, 803 P.2d 1083, 1086. Therefore, Collins, as the prevailing party on appeal, is entitled to costs and attorney's fees. We remand to the District Court for a determination of those costs and fees.

¶37 Therefore, we affirm the judgment of the District Court and remand to the District Court for further proceedings consistent with this opinion.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ KARLA M. GRAY

/S/ JIM REGNIER

/S/ JAMES C. NELSON

/S/ JIM RICE

1. Throughout Appellants' brief, the Swingers appear intent on having this Court review the Water Court's final determination as to who owns what water rights. Several pages of facts in Appellants' brief and numerous issues presented for review relate to the water rights dispute.

This Court has long embraced the doctrine of *res judicata*, which bars a party from relitigating a matter he or she has already had an opportunity to litigate. *Brault v. Smith* (1984), 209 Mont. 21, 25, 679 P.2d 236, 238. The water rights issue was heard before the Water Court in Case No. 76HE-11, and on appeal before this Court in *In re Adjudication of Existing Water Rights (Swinger v. Collins)*, 1999 MT 202, 295 Mont. 447, 984 P.2d 151. The Swingers had an opportunity to litigate the water rights issue at the Water Court, failed to appear at the hearing to argue the case, and were unsuccessful on the merits.

In the interests of judicial economy and to avoid duplication of evidence and the possibility of inconsistent adjudications of water rights, the District Court delayed acting on all motions until the Water Court settled the water rights issue. We refuse to review the water rights issue anew.

2. Rule 23(a)(4), M.R.App.P., provides in part:

The argument shall contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and pages of the record relied on.

During the adjudication of the water rights issue, we warned the Swingers about presenting contentions with no authority or discussion. *In re Adjudication of Existing Water Rights (Swinger v. Collins)*, ¶ 36. Among their forty-eight issues raised for review, the Swingers fail to support their contentions with citations to authority on dozens of

issues, particularly the procedural and evidentiary issues. Failure to comply with Rule 23 (a)(4), M.R.App.P., bars consideration of those issues. *See Rieman v. Anderson* (1997), 282 Mont. 139, 147, 935 P.2d 1122, 1126-27.