No. 92-505

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

FRANK TALLEY,

      Plaintiff and Appellant,

-v-

FLATHEAD VALLEY COMMUNITY COLLEGE,
a Community College organized by
the voters of Flathead County,
Montana, on April 1, 1967, according
to the Community College Law of the
1965 Montana Legislative Assembly;
HOWARD L. FRYETT, Individually and
as President of Flathead Valley
Community College; DENNIS P. ADAMS,
Individually and as Dean of Educational
Services of Flathead Community College;
LOWELL JAEGER, Individually and as the
Chairman of the Division of Humanities
of Flathead Valley Community College;
and DOES 1 through 5, inclusive,

      Defendants and Respondents.



FILED

JUL 29 1993

_Ed Smith_
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eleventh Judicial District,
               In and for the County of Flathead,
               The Honorable Michael H. Keedy, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          E. Eugene Atherton, Kalispell, Montana

      For Respondents:

          Jonathan B. Smith, Deputy Flathead County Attorney,
          Kalispell, Montana

      For Amicus Montana Federation of Teachers:

          Michael Dahlem, Helena, Montana

Submitted on Briefs:  May 13, 1993

Decided:  July 29, 1993

Filed:

_____
                  Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from a grant of summary judgment to Flathead Valley Community College by the Eleventh Judicial District Court, Flathead County. We affirm.

We consider the following issue on appeal:

Did the District Court err in granting Flathead Valley Community College's motion for summary judgment?

This action involves a series of term contracts signed between part-time instructor, Frank Talley (Talley) and Flathead Valley Community College (FVCC). The series of term contracts began in September of 1982 and continued throughout the winter term of 1989, constituting 24 terms at the college.

During the winter of 1989, FVCC canceled Talley's Religious Studies class and reinstated it after objections were raised by Talley. Subsequently, Talley's classes for spring term were listed but again canceled. Talley's classes were cut again during the summer and fall terms. Talley has not been rehired by the college.

Talley filed a complaint and demand for jury trial on October 10, 1989. Talley claimed that he has not been rehired because he has spoken out concerning policies at the college and in retaliation for union activity. FVCC claims that he was not rehired because of inadequate enrollment. On November 3, 1989, Talley filed an application for Alternative Writ of Mandate. The District Court issued an alternative writ on November 15, 1989, requiring the college to either reinstate Talley to his teaching position or to show cause why it should not do so.

2

FVCC filed a motion to quash the writ and to dismiss the application on November 20, 1989. A hearing was held on December 21, 1989, and subsequently the court quashed the alternative writ and dismissed the application for writ of mandate. Talley again filed an application for writ of mandate which was also denied by the court on August 9, 1991. At this time the court also denied FVCC's motion to dismiss.

The original complaint in this action contained nine counts. On February 19, 1992, Talley filed an amended complaint alleging a tenth count based upon Montana's educational tenure statute, § 20-4-203, MCA. Talley claimed that the tenure statute applies to part-time instructors of community colleges.

FVCC filed a motion for summary judgment on April 3, 1992. On July 30, 1992, Talley filed a cross-motion for summary judgment concerning Counts Ten, Three, Four, and Six of his amended complaint. The court issued its Memorandum and Order September 21, 1992, granting FVCC's motion for summary judgment as to all counts except for claims of free speech in Count Four and the attendant issues of a § 1983 claim and attorney's fees from Count Six and Count Nine.

Upon motion of Talley, the District Court in its September 21 Order also certified an interlocutory appeal pursuant to Rule 54(b), M.R.Civ.P.

Did the District Court err in granting Flathead Valley Community College's motion for summary judgment?

a. Statutory Tenure

Talley argues that according to § 20-4-203, MCA, he has acquired tenure. According to Talley, changes in the law governing community colleges do not preclude the tenure statute from applying to instructors at FVCC. Talley further argues that FVCC's definition of "teachers" is incorrect.

FVCC argues that the tenure statute is applicable to teachers in elementary and high school districts, but not to part-time instructors at a community college. FVCC contends that Montana has already defined "school teacher" as excluding community college instructors. Further, FVCC argues that the use of "teacher" in the tenure statute also requires that a person be certified to teach by the Department of Public Instruction and that such is not the case for instructors at FVCC.

The District Court determined that no genuine issues of material fact were present and that FVCC was entitled to summary judgment as a matter of law. The court determined that the tenure statute did not include community college faculty. The court granted summary judgment to FVCC on the tenure question which was Count Ten of Talley's complaint.

Our standard of review for a grant of summary judgment is the same as that initially applied by the trial court under Rule 56, M.R.Civ.P. Wangen v. Kecske (Mont. 1993), 845 P.2d 721, 726, 50 St.Rep. 6, 9. Summary judgment is appropriate if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P.

4

The moving party has the initial burden to prove that there are no genuine issues of any fact deemed material. Wangen, 845 P.2d at 726. Once movant has met this burden, the non-moving party must present evidence that a material fact does exist. Wangen, 845 P.2d at 726. Here, Talley also moved for summary judgment on this same issue.

The District Court determined that no disputed facts existed and that FVCC, which had moved for summary judgment, was entitled to judgment as a matter of law. Talley argued to the District Court that he, not FVCC, was entitled to summary judgment as a matter of law. Thus, the pivotal question is a matter of legal interpretation.

This is a case of first impression in Montana as this Court has not previously interpreted § 20-4-203, MCA. That section provides:

> **20-4-203. Teacher tenure.** (1) Except as provided in 20-4-208, whenever a teacher has been elected by the offer and acceptance of a contract for the fourth consecutive year of employment by a <u>district in a position requiring teacher certification</u> except as a district superintendent or specialist, the teacher is considered to be reelected from year to year thereafter as a tenure teacher at the same salary and in the same or a comparable position of employment as that provided by the last executed contract with the teacher unless the trustees resolve by majority vote of their membership to terminate the services of the teacher in accordance with the provisions of 20-4-204.
> (2) The tenure of a teacher with a district may not be impaired upon termination of services of the teacher if the following conditions exist:
> (a) the tenure teacher is terminated because the financial condition of the district requires a reduction in the number of teachers employed; and
> (b) continued employment rights are provided for in a collectively bargained contract of the district. (Emphasis added.)

5

The legislature has defined "teacher" in Chapter 20 as:

> (18) "Teacher" means any person, except a district superintendent, who holds a <u>valid Montana teacher certificate that has been issued by the superintendent of public instruction</u> under the provisions of this title and the policies adopted by the board of public education and who is employed by the district as a member of its instructional, supervisory, or administrative staff. This definition of a teacher shall also include any person for whom an emergency authorization of employment of such person has been issued under the provisions of 20-4-111. (Emphasis added.)

Section 20-1-101, MCA. We consider whether Talley as an instructor at a community college is a "teacher" to whom the tenure statute applies.

Talley contends that § 20-4-203, MCA, must include community college instructors because it always has and the legislature has not repealed it since it was originally codified as § 75-6103, RCM, in 1971. We decline to read "community colleges" into Chapter four of Title 20. Talley's assertion that we have previously defined "school teacher" as including those who teach in the State's system of higher education, citing Teamsters v. Cascade County School District No. 1 (1973), 162 Mont. 277, 511 P.2d 339, is incorrect. The <u>Teamsters</u> case defined who was included in the term "employees of the State." The action was one by the non-teaching employees of the State to obtain vacation time pursuant to § 59-1001, RCM (1947). <u>Teamsters</u> is not authority for the definition of teacher as it applies to community colleges.

The current law includes § 20-4-203, MCA, and uses the word "teacher." The current definition section of Chapter 20 which defines teacher, states that a teacher is a person required to have

6

a "teacher certificate that has been issued by the superintendent of public instruction." Section 20-1-101(18), MCA.

While it is true the community colleges of this State were once under the authority of OPI and were referred to as a School District, community colleges have been referred to as Community College Districts since 1979. In these Community College Districts, teaching faculty are not required to have teaching certificates issued by the OPI, although other requirements exist for employment as an instructor.

The 1979 Legislature attempted to clarify the statutes governing community colleges by combining the statutory guidelines concerning the community colleges into one chapter of Title 20-- Chapter 15:

> **Precedence of community college chapter.** Unless specifically identified in any other sections of the school laws prescribed in this title, community college districts are governed by the provisions of this chapter. Should there be a conflict between other requirements of this title and the provisions of this chapter regulating community college districts, the provisions of this chapter shall govern. (Emphasis added.)

Section 20-15-402, MCA.

This language clearly indicates that unless a statute in Title 20, other than in Chapter 15, specifically notes that it applies to community colleges, it does not apply to community colleges. The tenure statute is in Chapter 4 of Title 20. FVCC argues that the tenure statute does not specifically mention community colleges; therefore, it does not apply to them. We agree. Our job as a reviewing court is to interpret the laws before us -- not to add to those laws. Section 1-2-101, MCA.

7

The clear meaning of § 20-4-203, MCA, is that it applies to all teachers who have been certified to teach by the Superintendent of Public Education and who teach in school districts under the authority of the OPI. Instructors at a community college are not required to have certificates from the Superintendent and do not teach in school districts under the authority of the OPI. Community college instructors are not teachers as that term is defined in Chapter 4 of Title 20.

Because community colleges are not now governed by OPI as they once were, the Teamster case is no longer precedent for circumstances which involve community college instructors. To that extent, Teamsters is overruled. We have had occasion to consider the question of the relationship between community colleges and the word "teacher" found in § 20-1-101(20), MCA (now § 20-1-101(18), MCA).

In Rippey v. Flathead Valley Com. College (1984), 210 Mont. 396, 682 P.2d 1363, we held that the ordinary meaning of the word "teacher" does not encompass higher education faculty, "including a community college faculty member." Rippey, 210 Mont. at 400, 682 P.2d at 1365. While the Rippey case dealt with sick leave compensation for faculty members at FVCC, the holding specifically interpreted the word "teacher" as it is used in the current Title 20 definition.

Both Rippey and the plain wording of § 20-4-101(18), MCA, preclude any instructor at a community college in Montana from relying on the tenure provisions in § 20-4-203, MCA. Trustees of

8

the community colleges have been given power by the Legislature to establish the conditions of employment of their staff and instructors pursuant to § 20-15-225(1)(h), MCA. If FVCC chooses to have tenured faculty, it may establish the conditions under which that tenure is applied. Chapter 15 also contains the limitations of power with which the Legislature embued trustees:

> **Trustees to adhere to certain other laws.** Unless the context clearly indicates otherwise, the trustees of a community college district shall adhere to: . . . .

Section 20-15-404, MCA.

What follows is a long list of other sections in Title 20 with which trustees of a community college must also comply. Section 20-4-203, MCA, is not one of them.

We conclude that § 20-4-203, MCA, does not control tenure for instructors at any community college in Montana. Community colleges are unique centers for learning; they are neither high schools, nor are they part of the University System. Rippey, 210 Mont. at 397-98, 682 P.2d at 1364. Similarly, instructors teaching at these centers are also unique. Montana law specifically designates that community college districts are under the control of the Board of Regents and that community college trustees have the power to set conditions of employment for their faculties.

We hold that the District Court did not err in granting summary judgment as to Count Ten of Talley's amended complaint.

b. Employment Arrangements, Past Practices and Property Interests.

Talley argues here that he is entitled to a "reasonable expectation of the opportunity for continuing employment." Such an expectation, argues Talley, is differentiated from his tenure argument. FVCC argues that Tally can have no such expectation because of the clear wording of his term-by-term contracts.

FVCC contended, and Talley did not deny, that every term contract signed by Talley contained the following phrase:

> It is understood and agreed that acceptance of this contract confers no right on the part-time faculty member to tenure, credit toward tenure, or <u>any other permanent faculty status</u>. (Emphasis added.)

The wording of this phrase clearly indicates that any expectation of permanent status cannot be rooted in the term-by-term contracts which Talley has signed.

First, Talley argues that in his 1982 contract the aforementioned paragraph contained another sentence, part of which reads: "but <u>may</u> be renewed upon the same terms by <u>mutual agreement</u>, made in writing between the parties." (Emphasis added.) Talley argues that because this phrase was in his earlier contracts, that it must be read into all subsequent contracts which did not contain the wording.

Courts may not disregard the express language of contracts. New Hampshire Ins. Group v. Strecker (1990), 244 Mont. 478, 798 P.2d 130. The express wording of the contract signed by Talley indicates that the term contract cannot be the foundation for any kind of expectation of permanent employment. While he has used the phrase "opportunity for continuing employment" such a phrase is not legal and is an exercise in semantics. The essence of Talley's

10

argument is that he was entitled to continuing employment at FVCC.

We considered a similar argument in Farris v. Hutchinson (1992), 254 Mont. 334, 838 P.2d 374. Farris was employed under a series of term contracts prepared by the Montana University System. The last contract was effective between July 1, 1990, and June 30, 1991. Pursuant to a notice provision in her last contract, Farris received notice in February of 1991 that her contract would not be renewed. No reason for non-renewal was given.

Farris argued that she could show objective manifestations of job security beyond the term contract and thus, a genuine issue of material fact existed and summary judgment should not be granted. Farris, 254 Mont. at 337, 838 P.2d at 376. That is exactly the argument that Talley makes here. He argues that he was given oral manifestations of continued employment despite the wording of his contract.

In Farris we pointed out that an agreement made in writing cannot be altered except by another writing or by an executed oral agreement. In response to the same argument as that made here by Talley, we further stated in Farris that no obligation can be implied which would result in the obliteration of a right expressly given under a written contract. Farris, 254 Mont. at 339, 838 P.2d at 377. Talley's contract is clear in regard to the very nature of his employment. No obligation can be inferred which would indicate an alteration of that agreement.

Talley further argues that he had a property right in his position as a part-time instructor at the college. Such a property

11

interest, contends Talley, requires that he be given notice and a hearing before termination. FVCC argues that Talley did not have a property interest in his employment.

We have recognized that a property interest in one's position must be created by existing rules and regulations, state laws, or understandings between employee and employer. Medicine Horse v. Big Horn Co. School District (1991), 251 Mont. 65, 70, 823 P.2d 230, 233. In Medicine Horse, an employee argued he had a property interest in his employment despite the lack of any such indication in his employment contract. We refused to read a property right into Medicine Horse's contract.

Unlike Medicine Horse's contract, Talley's contract specifically precludes any property right. In the face of such plain wording, Talley's subjective belief that he had a property interest in his job simply does not create such an interest. A subjective expectancy can create no constitutionally protected interest. Medicine Horse, 251 Mont. at 71, 823 P.2d at 233; citing Perry v. Sindermann (1972), 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570.

It is the Sindermann case which Talley cites for the argument that he has a property right in his position at FVCC. He does not explain that statement, nor do we find anything in Sindermann which confirms his analysis of the case. Sindermann merely determines that a property right in employment may be created by past practices or "mutually explicit understandings" of employer and

12

employee. Sindermann, 408 U.S. at 601, 92 S.Ct. at 2699, 33 L.Ed.2d at 580.

The manifestations that Talley indicates existed are not "objective" but are totally subjective. The clear wording in his contract precludes any objective expectation of continuing employment.

We conclude that the contract between FVCC and Talley is clear and unambiguous on its face and creates no expectations of continuing employment with the college. FVCC met its burden by presenting the clear, unambiguous language of the contracts signed by Talley. Talley has not successfully rebutted this evidence nor shown that he is entitled to judgment as a matter of law. We hold the District Court did not err in granting summary judgment to FVCC on Count One of Talley's Amended Complaint.

c.  The Implied Covenant of Good Faith and Fair Dealing.

Talley argues that the various defendants here acted in violation of the covenant of good faith and fair dealing. FVCC argues that the contract between it and Talley was not breached and, therefore, the college did not violate the covenant.

Talley did not file a cross-motion for summary judgment on this issue. Therefore, FVCC had the burden to prove that no material issue existed and it was entitled to judgment as a matter of law. It met that burden. Talley did not successfully rebut it.

Talley argued that under Montana law, the covenant of good faith and fair dealing is implied into every contract. Mann Farms, Inc. v. Traders State Bank of Poplar, Montana (1990), 245 Mont.

13

234, 801 P.2d 73. This is true. Thus, Talley argues that the college breached the covenant by not hiring him back.

Talley has overlooked a significant factor: the nature and extent of the obligation of good faith and fair dealing is measured by justifiable expectations of the parties. Cook v. Principal Mut. Life Ins. Co. (D.Mont. 1990), 784 F.Supp. 1513. The existence of the "no-tenure" phrase from Talley's contracts is an undisputed material fact. Despite such agreement, Talley argues he had a reasonable expectation of continuing employment. Given the plain wording of his contracts, such an expectation is not reasonable, nor is it justifiable.

Talley presents no argument which indicates a justifiable expectation in continued employment. We hold that the District Court did not err in granting summary judgment to FVCC on Count Two of Talley's Amended Complaint.

d. Tortious Interference with a Contract Right and Constitutional Claims.

These arguments comprise Counts Three and Four of Talley's Amended Complaint. Talley filed a cross-motion for summary judgment on these two Counts. Talley argues that FVCC violated his constitutional rights under the United States and Montana Constitutions:

> No person shall be deprived of life, liberty or property without due process of law.

Art. II, Sec. 17, Mont.Const. Talley also argues equal protection, denial of due process, two issues on free speech and one for slander, privileges and immunities under the First, Fifth and

14

Fourteenth Amendments and a 42 USC § 1983 claim. FVCC argues that there was no tortious interference with Talley's expectancy in continuation of his employment because of the clear wording in his contract. FVCC also contends that § 1983 claims are not substantive claims but are based upon a deprivation of a constitutional right and Talley's rights have not been violated under the Montana or the United States Constitution.

The District Court granted FVCC's motion for summary judgment as to all issues except the free speech claims. Because most of these claims are based upon Talley's property interest argument, we direct the reader to previous portions of this opinion and restate our prior determination: Under the facts of this case, Talley has no property interest in his position because his contract clearly prohibits it. Therefore, due process under the Montana or United States Constitution is not at issue. Further, all contracts with FVCC were successfully completed; thus, tortious interference with a contract is not an appropriate claim. Nor does the record contain evidence that others similarly situated were treated any differently than Talley in his position as part-time instructor, precluding an equal protection argument. The Privileges and Immunity clause of the Fourth Amendment prevents discrimination by states against non-residents. The Privileges and Immunity clause of the Fourteenth Amendment protects attributes of United States citizenship and is rarely applicable. There is no privileges and immunities clause in the Fifth Amendment. Therefore, any privileges and immunities argument is also inappropriate.

15

However, the District Court did determine that Talley had a right to free speech which was protected by due process. The court did not determine whether this right had been violated. The claim evolved from a letter sent to Talley from FVCC during the course of legal proceedings. FVCC there informed Talley that he would be considered for rehire in future terms only if he disavowed that he had expectations of continued employment.

The District Court denied both FVCC's and Talley's motions for summary judgment on the free speech issue attendant to Count Four of the amended complaint concerning free speech. No summary judgment being issued, that claim is still alive. Further, the § 1983 claim cannot be considered until Talley's free speech claims are determined because a §1983 claim is based upon the deprivation of "rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 USC § 1983; Dagel v. City of Great Falls (1991), 250 Mont. 224, 819 P.2d 186.

We conclude that the only constitutional claim which has merit under the pleadings is the claim of denial of free speech according to the First Amendment to the United States Constitution and the attendant § 1983 claim. (Count Nine alleges a claim of slander and presents a question of fact to be considered by a jury.)

We hold that the District Court did not err in so determining.

e.   Attorney's Fees.

The District Court determined that attorney's fees for the constitutional violations associated with 42 USC § 1983 could not be determined until after litigation of the free speech issue. If

16

Talley prevails on his free speech claims, the District Court determined that he would be entitled to attorney's fees. Consideration of attorney's fees is, therefore, premature at this time.

### f. Injunctive Relief.

Talley argues that he is entitled to injunctive relief and rehire because he was not rehired because of his exercise of free speech. FVCC contends that there are no grounds on which injunctive relief could be granted to Talley.

The District Court determined that because Talley did not have a property interest in his position as part-time instructor, there were no grounds for injunctive relief.

An injunction is an equitable remedy fashioned according to the circumstances of a particular case. Montana Tavern Ass'n v. State By and Through Dept. of Revenue (1986), 224 Mont. 258, 729 P.2d 1310; § 27-19-101, MCA, et seq. The issuance or refusal of injunction is addressed to the discretion of the trial court. Butler v. Germann (1991), 251 Mont. 107, 822 P.2d 1067. Because Talley did not have a property interest or a right to tenure under Montana's laws, the court did not abuse its discretion in denying a grant of injunction.

We hold that the District Court did not err in granting summary judgment to FVCC on Count Eight of Talley's amended complaint.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

Justice Terry N. Trieweiler did not participate.

18

July 29, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

E. Eugene Atherton
Attorney at Law
735 Main St.
Kalispell, MT  59901

Jonathan B. Smith, Deputy
Office of the County Attorney
P.O. Box 1516
Kalispell, MT  59903-1516

Michael Dahlem, Esq.
Montana Federation of Teachers
P.O. Box 6169
Helena, MT  59604

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy