No. 95-240

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

FRANK TALLEY,

Plaintiff and Appellant,

v.

FLATHEAD VALLEY COMMUNITY COLLEGE, a
Community College organized by the
voters of Flathead County, Montana, on
April 7, 1967, according to the Com-
munity College Law of the 1965 Montana
Legislative Assembly; HOWARD L. FRYETT,
Individually and as President of Flathead
Valley Community College; DENNIS P. ADAMS,
Individually and as Dean of Educational
Services of Flathead Valley Community
College; LOWELL JAEGER, Individually and
as the Chairman of the Division of
Humanities of Flathead Valley Community
College; and DOES 1 through 5, inclusive,

Defendants and Respondents.



FILED

SEP 29 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eleventh Judicial District,
               In and for the County of Flathead,
               The Honorable Katherine R. Curtis, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

            E. Eugene Atherton, E. Eugene Atherton, P.C.,
            Kalispell, Montana

        For Respondents:

            Todd A. Hammer, Warden, Christiansen, Johnson &
            Berg, Kalispell, Montana


                            Submitted on Briefs:  August 31, 1995

                                   Decided:  September 29, 1995

Filed:

_____
                Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Frank Talley appeals from a summary judgment entered by the Eleventh Judicial District Court, Flathead County, on his free speech claim. We affirm.

The issue is whether the District Court erred in granting defendants' motion for summary judgment on the free speech claim and denying Talley's motion for summary judgment on the same claim.

From 1982 until 1989, Talley was employed under a series of term contracts as a part-time philosophy and religious studies instructor at Flathead Valley Community College (FVCC). During the winter of 1989, FVCC cancelled Talley's religious studies class, but later reinstated it. Talley's classes for spring quarter 1989 were cancelled. From that time forward, FVCC did not rehire Talley.

Upon learning that his classes for spring 1989 had been cancelled, Talley asserted his belief that he had a right to continued employment. He communicated this belief to FVCC's president personally, to FVCC through letters from his attorney, and to the FVCC Board of Trustees personally. Talley's attorney wrote: "[I]f [Talley] is employed, it will tend to look as though the college has followed through with its intent to continuously employ my client."

FVCC responded by letter through its attorney that any claim by Talley of a continuing right of employment was not supported under the language of his employment contracts. FVCC's attorney asked Talley to disavow his expectation of continued employment.

2

"In absence of such a disavowal and acknowledgement, I must advise [FVCC] . . . not to employ Mr. Talley for the summer quarter and to employ him very sparingly thereafter." FVCC's counsel cautioned that Talley's expectation might otherwise ripen into a reasonable expectation of continued employment.

In October 1989, Talley filed a complaint listing multiple claims for relief relating to FVCC's failure to rehire him. The District Court granted summary judgment to defendants on most of Talley's claims. The court certified its judgment for interlocutory appeal pursuant to Rule 54(b), M.R.Civ.P. This Court affirmed. Talley v. Flathead Valley Community College (1993), 259 Mont. 479, 857 P.2d 701. Talley's case then resumed in District Court on his remaining claims, violation of his right to free speech and slander.

Both Talley and the defendants moved for summary judgment on the free speech claim. Talley maintained that FVCC conditioned his continued employment at FVCC upon his abandonment of his position that he had a right to continued employment, and, in so doing, violated his right to free speech. The District Court ruled as a matter of law that Talley's speech was not constitutionally protected in this instance because it did not address a public interest or concern but rather involved private, employment-related issues. The court therefore granted defendants' motion for summary judgment.

The case then went to trial on the remaining claim of slander by defendant Lowell Jaeger. The jury returned a verdict for

Jaeger. Talley now appeals the summary judgment on his free speech claim.

Did the District Court err in granting defendants' motion for summary judgment on the free speech claim and denying Talley's motion for summary judgment on the same claim?

This Court's standard of review of a summary judgment is the same as the standard initially used by the district court and set forth at Rule 56(c), M.R.Civ.P. This Court must determine whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law, based upon the facts set forth in the pleadings and any depositions, answers to interrogatories and requests for admissions, and affidavits filed. Minnie v. City of Roundup (1993), 257 Mont. 429, 431, 849 P.2d 212, 214.

In this case, Talley's cross-motion for summary judgment demonstrates that there are no issues of material fact. The question is whether, based upon the record, FVCC was entitled to judgment as a matter of law.

The First Amendment protects speech of public employees upon matters of public concern. This furthers the purpose of the First Amendment "to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." Connick v. Myers (1983), 461 U.S. 138, 145, 75 L.Ed.2d 708, 718, 103 S.Ct. 1684, 1689 (citation omitted).

4

However, except in "the most unusual circumstances," the First Amendment does not provide immunity for speech concerning matters only of personal interest to the public employee. Connick, 461 U.S. at 147. This assures government employees the same rights as those who do not work for the government. Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record. Connick, 461 U.S. at 147-48. The inquiry into the protected status of speech is one of law, not fact. Connick, 461 U.S. at 148, n. 7.

Although "most unusual circumstances" were not defined in Connick, Talley argues that such circumstances are present here. He asserts that the elimination of his classes at FVCC was a matter of public concern; that he spoke out publicly as well as privately about it; and that after his last contract with FVCC expired, he was an ordinary public citizen and his comments about FVCC were no longer subject to the threshold inquiry from Connick.

Talley submitted to the court copies of letters between FVCC's attorney and his attorney, and defendant Howard Fryett's responses to interrogatories and requests for admissions. He submitted his own affidavit, in which he recounted his "quest for due process." He also submitted a copy of an April 1989 article from the local newspaper, describing an FVCC board meeting. The headlined result of the meeting was an increase in tuition fees. The article included a paragraph stating that Talley had appeared before the

5

board to protest the elimination of his classes and to threaten a lawsuit.

Talley cites as comparable to this case Trotman v. Board of Trustees of Lincoln University (3rd Cir. 1980), 635 F.2d 216, in which James Trotman successfully sued Lincoln University for failing to renew his teaching contract. Trotman was decided prior to Connick, and the Connick distinction between matters of public concern and matters of private concern was not addressed therein. The Trotman opinion does, however, allude to the widespread nature of the dispute between teachers and the administration of Lincoln University. Trotman, 635 F.2d at 219.

The Fifth Circuit Court of Appeals has ruled that grievances or complaints about the subject of class scheduling are not a matter of public concern, but are instead personal or private employment-related grievances not within constitutionally-protected "free speech" claims under the First Amendment. See Dorsett v. Bd. of Tr. for St. Colleges & Univ. (5th Cir. 1991), 940 F.2d 121. In Dorsett, a tenured associate math professor brought a 42 U.S.C. § 1983 civil rights claim against university officials for alleged harassment and violation of First Amendment rights. The professor alleged that he had been denied summer employment by the administration in retaliation for publicly supporting another professor who refused to lower academic standards. He alleged that his exercise of free speech on matters of public education caused the retaliation. The court disagreed.

> Communication . . . rises to the level of public concern
> if a person speaks primarily as a citizen rather than as

6

an employee. We must assess, therefore, Dorsett's motivation in complaining to the administration. After reviewing the summary judgment evidence, we conclude that Dorsett's complaints at the time of the alleged harassment reflected predominantly his concerns about the assignment of summer and overload classes to himself and to his friends in the department. These concerns are matters of private, not public, interest.

Dorsett, 940 F.2d at 124 (citations omitted).

In the present case, the record does not establish that FVCC's failure to rehire Talley was a matter of public debate or interest in the community at large. The record, however, does establish that Talley's primary motivation for his statements was his desire for more teaching contracts for himself. We conclude that Trotman is not persuasive authority for Talley's position in this case. We further conclude that Talley has not demonstrated "most unusual circumstances" justifying an exception from the general rule set forth in Connick and applied in Dorsett.

Talley also makes an argument concerning interference with his freedom of thought. However, it was Talley's statements, not his thoughts, which FVCC asked him to disavow.

Finally, Talley points out that the District Court did not grant summary judgment on the free speech claim prior to the first appeal, and that in its opinion on that appeal, this Court wrote:

We conclude that the only constitutional claim which has merit under the pleadings is the claim of denial of free speech according to the First Amendment to the United States Constitution and the attendant § 1983 claim.

Talley, 857 P.2d at 708. He argues that this represented a ruling that his free speech claim must be allowed to proceed to trial.

7

The District Court's failure to grant summary judgment on the free speech claim was not an issue before this Court in the first appeal. In that opinion, we further stated: "No summary judgment being issued, [the free speech] claim is still alive." Talley, 857 P.2d at 708. The language cited by Talley was not a ruling on the merits of the free speech claim; it was merely dicta.

In the current appeal, in contrast, the propriety of summary judgment on the free speech claim is the issue before this Court. We have now reviewed the summary judgment, and we hold that entry of summary judgment for defendants on the free speech claim was correct.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____
Justices

Justice William E. Hunt, Sr., respectfully dissents:

I do not agree with the conclusion of the majority that the language of our opinion in Talley, 857 P.2d at 708, is dicta, when this court wrote:

> We conclude that the only constitutional claim which has merit under the pleadings is the claim of denial of free speech according to the First Amendment to the United States Constitution and the attendant 1983 claim.

Talley, 857 P.2d at 708.  Our conclusion was a ruling on the merits of the free speech claim.  I would reverse the summary judgment by the District Court and allow the matter to go to trial.

William E. Hunter
_____
Justice

9