JUSTICE NELSON
specially concurs and dissents.
¶35 I concur in the Court’s discussion of and in its conclusion that, once earned, vacation pay is a wage collectible in the same manner and under the same statutes as are wages. I also agree that, within the limits imposed by the constitution or by law, an employer is free to set the terms and conditions of employment and compensation and that the employee is free to accept or reject such conditions and compensation. Finally, I agree that the critical question in the case at bar is whether Langager earned the vacation pay to which she claims entitlement. On this question, I would hold that she has not. Rather, I would reverse the District Court and affirm the conclusion of the Board of Personnel Appeals that Langager “did not fulfill the requirements delineated by the employer to qualify for vacation pay” because she did not comply with the personnel manual’s requirement that she “work both the day prior to and the day after taking vacation.” Because Langager did not fulfill this contractual prerequisite, she is not entitled to vacation pay.
¶36 As to issue 1,1 do not see any particular need for our lengthy discussion of Gates v. Life of Montana Ins. Co. (1982), 196 Mont. 178, 638 P.2d 1063. In the proceedings below, the parties did not argue whether there was a bargained for agreement with new consideration. Indeed, both Crazy Creek’s and Langager’s position was always that the new agreement did apply. There is no question that Langager accepted the new agreement. She sought to take advantage of it. If she had taken a contrary position, then she could not claim two weeks vacation pay, as that was only payable under the new policy that went into effect after she was hired. Whether there was a bargained for exchange and new consideration under Gates is a non-issue.
¶37 As to issue 2, there is no dispute that, absent a contractual or statutory requirement to the contrary, the decision to grant employees vacation, paid or otherwise, is in the discretion of the employer. Moreover, we appear to be agreed that, in exercising this discretion, the employer is entitled to fashion reasonable requirements and restrictions pertaining to earning and using the vacation benefits granted.
¶38 I part company with the majority at the point it concludes that “in no uncertain terms, Crazy Creek states that it ‘will provide two weeks paid vacation’ to employees who reach their second anniver *458 sary date.” That misrepresents Crazy Creek’s vacation policy. In fact, Crazy Creek agreed that it would provide its employees two weeks vacation pay subject to various restrictions and requirements. These included, among others, that “[a]n employee must work the regularly scheduled work days before and after the paid vacation period in order to be eligible to receive vacation pay.” (Italics added.)
¶39 Crazy Creek implemented this policy to benefit its employees by granting them two weeks paid vacation, as opposed to the one week to which they had been previously entitled. Crazy Creek also adopted the new vacation policy to benefit its own business operations by discouraging seasonal turn-over in its work force and by providing incentives for employees to remain in the company’s service.
¶40 In order to “earn” or to become eligible for vacation pay, employees had to comply with the conditions clearly set forth in the employee manual. There is no dispute that Langager knew of the requirements to become eligible for vacation pay; she simply did not want to abide by those. She wanted the benefits of the employer’s agreement to provide vacation pay without any of the concomitant obligations that the agreement imposed upon her. Unfortunately, in agreeing with this tack, the majority has effectively and improperly re-written the employment contract.
In the construction of an instrument, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted or to omit what has been inserted. Where there are several provisions or particulars, such a construction is, if possible, to be adopted as will give effect to all.
Section 1-4-101, MCA. See also Talley v. Flathead Valley Community College (1993), 259 Mont. 479, 487, 857 P.2d 701, 705, cert. denied 510 U.S. 1044, 114 S.Ct. 691, 126 L.Ed.2d 658 (1994) (court may not disregard the express language of an employment contract and read into the agreement expectations of employment not supported by the contractual language used by the parties).
¶41 It is for these same reasons that I disagree with Justice Leaphart’s concurrence. He assumes that Langager “earned” her vacation pay merely by completing two years of employment. She did not. The employer defined at what point vacation pay was “earned” and that definition included certain prerequisites with which Langager did not comply. The only way Justice Leaphart’s view can be valid , is to judicially write out of the employee manual the very conditions that Langager agreed to in accepting the new vacation pay *459 policy. Since she never earned vacation pay, she had no wages to claim.
¶42 Furthermore, the majority’s reliance on Wolf v. Sam’s Town Furniture, Inc. (N.M.Ct. App. 1995), 904 P.2d 52, is unavailing. Unlike the case at bar, Wolf did not involve any issue of when, under the terms of a specific written employment policy, vacation time “accrues” or is “earned”. The same is true of Kistler v. Redwoods Community College District (Cal. Ct. App. 1993), 19 Cal. Rptr. 2d 417. While in that case the Court ruled that the employer could not divest the employee of vacation pay already earned (a point with which no one argues), the Court also conceded the obvious — that by specific order or general policy, the employer could bar the accrual of future vacation pay absent compliance with the conditions which the order or policy imposed. Kistler, 19 Cal. Rptr. 2d at 421.
¶43 More to the point is the decision in Sweet v. Stormont Vail Regional Med. Ctr. (Kan. 1982), 647 P.2d 1274, wherein the Court held that the failure of a hospital employee to give two weeks prior notice of termination as required by the handbook precluded any determination that her unused vacation time constituted “earned wages.” As the Court stated:
It is apparent to this court that by the Claimant’s agreement Claimant only became entitled to vacation pay, hence “earned” it, in one of two ways: scheduling time off with pay and continuing her employment, or giving Respondent two weeks prior notice of her intent to resign. The nature of Respondent’s service to the public requires a stable work force and requiring notice or continued employment for entitlement to vacation pay was Respondent’s means of maintaining that work force. The notice requirement for “earning” unused accumulated vacation pay was consciously drafted for this purpose. Claimant’s failure to comply with either of the requirements of her agreement with Respondent prevented her from earning vacation pay.
Sweet, 647 P.2d at 1281 (quoting the trial court’s analysis).
¶44 Similarly, the Court in New Mexico State Labor and Indus. Comm. v. Deming Nat’l Bank (N.M. 1981), 634 P.2d 695, upheld the employer’s right to condition payment of vacation pay on the employee’s compliance with the Bank’s personnel guidelines. Accord Bondio v. Joseph Binder, Inc. (La.Ct.App. 1946), 24 So.2d 398, 401. In Rowell v. Jones & Vining, Inc., (Me. 1987), 524 A.2d 1208, 1211, the Court stated:
*460 An employer is free to set the terms and conditions of employment and compensation and the employee is free to accept or reject those conditions. We see no reason why an employer may not condition the vesting of a benefit right on some event or act in addition to the performance of services, such as continued employment until a given date.
¶45 In the instant case, Crazy Creek, through its employee handbook, set clear and -unambiguous requirements for its employees to earn vacation pay. These conditions were not unreasonable and were designed to benefit both Crazy Creek’s employees and its own business operations. Langager knew the requirements; agreed to the policy; and sought to take advantage of her employer’s vacation benefit package. She was not divested of payment for vacation time which she had earned. Rather, by failing to comply with Crazy Creek’s paid vacation policy, Langager never earned vacation pay in the first place.
¶46 I would reverse the decision of the District Court and remand for an entry of an order affirming the decision of the Board of Personnel Appeals. I dissent from our failure to do so.
JUSTICES GRAY and TRIEWEILER join in the foregoing special concurrence and dissent.