No. 87-07

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

HERB BELCHER,

Plaintiff and Appellant,

-vs-

DEPARTMENT OF STATE LANDS, a
political subdivision of the State
of Montana,

Defendant and Respondent.

---

APPEAL FROM:  District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Douglas Harkin, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Datsopoulos, MacDonald & Lind; Edward A. Murphy,
Missoula, Montana

For Respondent:

John Bobinski, Dept. of Administration, Helena,
Montana

---

Submitted on Briefs:  July 1, 1987

Decided:  September 15, 1987

Filed: SEP 15 1987

*Ethel M. Harrison*

Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Herb Belcher appeals from an order of the Fourth Judicial District Court, Honorable Douglas G. Harkin presiding, that granted summary judgment under Rule 56(c), M.R.Civ.P., for the defendant, Department of State Lands. Because our review of the record shows that there were no material issues of fact and because the law is squarely behind the defendant, this Court will affirm the judgment of the District Court.

Belcher filed suit against the Department on February 19, 1985, alleging that the Department had acted without just cause when it dismissed him from employment on April 3, 1984. He also claimed that the dismissal was not in accordance with Department policies on discipline and discharge, that the Department breached its contract of employment with Belcher, and by doing so, had breached the covenant to deal fairly with Belcher. In its defense, the Department denied the charges and answered that Belcher had failed to exhaust the grievance procedures available to him.

The Department moved for summary judgment. It asserted that the causes for Belcher's dismissal were not disputed and that Belcher merely sought to have a jury reconsider his firing. The District Court considered two sets of briefs and also heard oral arguments on the motion. The District Court specifically requested Belcher to set out the public policies that he alleged his firing violated. Belcher failed to respond to this request of the court.

The District Court determined that traditional public policy violations were not at issue here. It ruled also that Belcher did not claim he was fired for a reason that violated good faith.

> The basic cause for termination is not in
> dispute. The court's role is to
> determine whether the Department's
> procedural handling of this case complied
> with its written personnel policies. If
> the termination is in compliance with
> procedures; the termination is _proper_.
> (Emphasis in original.)

District Court Order and Memorandum of October 28, 1986, p.
2, citing Nye v. Department of Livestock (1982), 196 Mont.
222, 639 P.2d 498. The District Court concluded that the
Department, not the courts, had the responsibility to
evaluate Belcher's performance and to discipline or terminate
Belcher. Thus, it granted summary judgment for the
Department on October 28, 1986.

In September 1980, Belcher joined the Department as the
communications engineer for the Fire Suppression Bureau in
Missoula. Later memorandums indicate that as much as 60
percent of the communications engineer's time was to be spent
repairing and installing radios and devising a statewide
communications system and design. The remainder of the
communications engineer's time was to be spent with licensing
matters, preparation of bid specifications and budget
estimates as well as travel and firefighting activity. All
of these duties were listed in the position description that
was issued in June 1980.

Belcher's supervisor, Jack Peters, began receiving
complaints about Belcher's work in 1982. The substance of
these complaints was that Belcher was not designing radio
systems adequately; that he was shirking his responsibility
of setting up radio stations by having regional officers do
the legwork that he was better qualified for; that the
statewide communication plan he had been assigned to write
was short, weak, ineffective, incomplete and incomprehensible
to the layman; that he had consistently failed to file for

3

the needed licenses with the Federal Communications Commission; and that he had used a state vehicle (on work time) in private projects for profit. A memorandum of punitive discipline requiring Belcher to compensate the state for private use of a state vehicle was issued to Belcher on January 17, 1983. Belcher noted that he reserved the right to respond at a later date and signed the document.

In April 1983, Peters removed Belcher from other work activities so that he could devote full time to preparing the plan. Belcher was told that the communication plan had top priority and that it was essential since Department employees depended on the radios for their lives in emergencies. Peters also began filing memoranda on Belcher's performance. In a two-month period in late 1983, three separate field officers complained to Peters about incompetence on the part of Belcher in setting up and licensing a communications system near Miles City; in setting up a base station in southwestern Montana that did not allow for a remote control specificiation; and devising a system near Kalispell that allowed for two radio channels, but since each canceled out the other only one could be used at a time.

These last complaints served as the basis of a notice of corrective discipline issued to Belcher on January 12, 1984. This notice complied with state disciplinary rules by identifying the grounds for the disciplinary action, listing the improvements anticipated, and noting the consequences of failure to comply, including the possibility of termination. The notice required the performance deficiencies be rectified within 60 days and that Belcher submit to weekly evaluations. It required also that Belcher submit a complete Radio Communications Plan and a manual on maintaining and installing radios. Belcher was advised of his right to file a rebuttal; he chose not to file the rebuttal.

4

Peters met with Belcher on March 5, 1984. He warned Belcher that his progress was not sufficient. He conducted a review of Belcher's actions on March 16 and determined that Belcher's work remained inadequate. The Radio Communications Plan, which the Department had been expecting from Belcher since he had been hired, was submitted on March 14, 1984. It consisted of 26 pages, eight of them blank forms. It did not include some material that Peters had specifically requested. On March 19, 1984 and at Peters' request, Belcher filed a memorandum "of things done during the past 60 day[s]." It lists nine tasks, several of which Belcher conceded at deposition would have taken a matter of hours to do. Also listed was revision of the radio plan and revision for the communication plan. The Department, however, still found the plans to be deficient.

On April 3, 1984, Belcher was told by Dennis Hemmer, Commissioner of State Lands, that he was being dismissed. He was notified that he had a right to have an attorney at the meeting and that he had a right to file a grievance. He did not call his attorney, although he had retained legal counsel believing this result was imminent, and did not file the grievance.

This extensive review of the record is necessary since the first question this Court faces is whether the District Court erred in granting summary judgment. Summary judgment under Rule 56(c), M.R.Civ.P., is intended to encourage judicial economy by eliminating unnecessary trials in which no genuine issue of fact is presented. Cereck v. Albertson's Inc. (1981), 195 Mont. 409, 411, 637 P.2d 509, 510. This Court will uphold summary judgments when the complaining party cannot point to material and substantial facts that would alter the District Court's decision. If a factual controversy exists, disposition by summary judgment will not

5

suffice. Dare v. Montana Petroleum Marketing Co. (Mont. 1984), 687 P.2d 1015, 1019, 41 St.Rep. 1735, 1738. In the midst of a four-day deposition of Belcher, this exchange occurred:

> Q. [By Ms. Mitchell] The allegations of your Complaint says [sic] your termination was without just cause. Why do you think your termination was without just cause? What do you mean?
>
> A. I believe that I was under such a strain I was unable to perform my duties properly.
>
> Q. Are you stating that you failed to perform your duties properly?
>
> A. Under the conditions, yes.
>
> Q. How do you think the Department of State Lands violated its policy on discharge?
>
> A. Under the Montana--they call it the MOM manual. I think it is specified a corrective memo is not just cause for termination. I believe it has got to be a disciplinary memo. I think that's stated in the manual.
>
> Q. Do you consider, under the Department of State Lands policies, a failure to properly perform the duties of your position just cause for discharge?
>
> A. Not necessarily.
>
> Q. But it is a reason for discharge, isn't it?
>
> A. Yes.
>
> Q. Your Complaint says that the Department of State Lands violated a contract of employment. What contract of employment did you have with State Lands?

A. It is an unwritten contract. I believe in the--for any new employee there is a 6 months' probationary period and it is more or less understood after 6 months it is a permanent position. I believe that is a common belief of the majority of the people that work for the State.

Q. Permanent employees can be discharged for failure to properly perform their duties, can't they?

A. You can be terminated for any reason.

Q. Yes or no.

A. Yes.

This exchange indicates that no underlying dispute of facts is present. Belcher was not doing his job; he had received notice that his work was not adequate; he failed to rectify the situation, and he was subsequently discharged. It appears to us that no basic question of fact exists for jury determination and Belcher does not raise any specific fact question.

Instead, he raises three issues of law:

1. Did the District Court err when it held no action for wrongful discharge or breach of the covenant of good faith would lie if the employer followed proper procedure?

2. Does termination of state employment without just cause constitute a violation of public policy sufficient to be a wrongful discharge?

3. Does an employer who has promulgated rules saying that employees will not be discharged except for just cause violate the covenant of good faith and fair dealing if he discharges an employee without just cause?

7

Section 39-31-303, MCA, guarantees the Department certain rights:

> Public employees and their representatives shall recognize the prerogatives of public employers to operate and manage their affairs in such areas as, but not limited to:
>
> (1) direct employees;
>
> (2) hire, promote, transfer, assign, and retain employees;
>
> (3) relieve employees from duties because of lack of work or funds or under conditions where continuation of such work be inefficient and nonproductive;
>
> (4) maintain the efficiency of government operations;
>
> . . .

This statute was held valid where a school district demoted an administrator and reassigned her to classroom activities. Sorlie v. School District No. 2 (Mont. 1983), 667 P.2d 400, 404, 40 St.Rep. 1070, 1075.

Because terms of Belcher's employment contract included the development of a Radio Communications Plan and a Radio Manual, because Department managers instructed him as to what subjects should be included in the manual and plan, because Belcher failed to promptly and properly complete those items, and because Belcher proved to be incompetent in other aspects of his job, the Department exercised its right to dismiss Belcher. Supervisors had issued reprimands, notices of corrective discipline and notices of punitive discipline throughout Belcher's 43 months of employment. He had the chance to rebut these charges, but chose not to do so. He had the right of grievance, but failed to exercise it. Furthermore, Belcher was unable to show the District Court

8

what public policies were affected by his dismissal other than his own belief that just cause was violated.

There are many public policy concerns that will trigger a wrongful discharge claim. Examples were discussed in one recent case: dismissal of employee for not perjuring himself; dismissal of employee who files for workers' compensation; or dismissal of the employee who refuses sexual relationships with employer. Keneally v. Orgain (1980), 186 Mont. 1, 6, 606 P.2d 127, 129. In order to find a public policy concern that would permit Belcher to collect for wrongful termination, this Court would need to add another proscription, the dismissal of state employees who are not performing their duties. In order to constitute a public policy violation, Belcher's claims would have to "further a state interest in protecting the general public which transcends the employment relationship." Brinkman v. State of Montana (Mont. 1986), 729 P.2d 1301, 1308, 43 St.Rep. 2163, 2171, (emphasis in original). Belcher's claim does not state a public concern; it is a personal matter.

Belcher asserts that § 2.21.6503(6), A.R.M., in effect when he was dismissed, supports his claim that his dismissal violated public policy. Section 2.21.6503(6), A.R.M. read, "When punitive discipline is necessary, just cause, documentation of facts, and due process are required." Section 2.21.6507(6) defines just cause as "reasonable, job-related grounds for taking a disciplinary action based on failure to satisfactorily perform job duties . . . " This Court has held that administrative rules "may be the source of a public policy," Nye, 639 P.2d at 502 (emphasis added); but that public policy is not derived solely from administrative rules. "Public policy violations may conceivably arise on other facts or theories." Dare, 687 P.2d at 1019.

9

The facts that Belcher disagreed with his discharge does not mean that the Department's decision was wrong, Belcher's right to grievance proceedings under § 2.21.6503(1), A.R.M., (now found at § 2.21.6515, A.R.M.) provided his remedy. He failed to use that remedy. In such circumstances, the courts should not interfere. "Whether an employee has performed satisfactorily is to be determined by the employer and not by the courts." Percival v. General Motors (8th Cir. 1976), 539 F.2d 1126, 1129; see also, Pierce v. Ortho Pharmaceutical Corp. (N.J. 1980), 417 A.2d 505, 510-11. This Court will not interfere with the Department of State Lands' right to manage its affairs and hire employees who will perform their jobs so long as there is a standard for discipline and the Department has abided by it. Summary judgment for the Department on Belcher's wrongful discharge claim was properly granted.

It is clear from the record, the deposition of Belcher, and Belcher's own conduct that he knew his job was in jeopardy. The Department repeatedly attempted to help him until the situation was out of control. These particulars represent notice to Belcher that he had to improve or risk discharge. The Department recognized the duty to act in good faith and abided by it. Gates v. Life of Montana (Mont. 1983), 668 P.2d 213, 215, 40 St.Rep. 1287, 1289.

In Nordlund v. School District No. 14 (Mont. 1987), _____ P.2d _____, 44 St.Rep. 1183, 1186, the covenant of good faith and fair dealing was not breached where the employer school district gave the administrator proper notice his contract would not be renewed, and complied with statutory requirements dealing with school contracts set out in § 20-4-401, MCA. It was held that "because no breach of the employment contract occurred, it cannot be said that the

10

school board breached the implied covenant of good faith and fair dealing." Nordlund, 44 St.Rep. at 1186.

The case before this Court is similar. The Department of State Lands assigned Belcher to conduct specific duties. Belcher's work was not adequate and he was warned that it must improve or he would face the prospect of termination. His work performance did not improve and he was discharged. Because the Department followed administrative regulation in warning Belcher about his work, and attempted to assist him, it cannot be said that the Department violated the covenant of good faith and fair dealing when it discharged Belcher. Consequently, Belcher's claims for breach of the covenant of good faith is deficient and summary judgment for the Department was proper.

We affirm the judgment of the District Court.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices