No.  96-194

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

DARRIN FENGER,

      Plaintiff and Appellant,

    v.

FLATHEAD COUNTY, MONTANA, a body politic and
corporate; the Board of County Commissioners
thereof; and HOWARD GIPE, SHARON STRATTON,
and ROBERT WATNE, in their official capacity
as County Commission members,

      Defendants and Respondents.

FILED

AUG 27 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eleventh Judicial District,
               In and for the County of Flathead,
               The Honorable Katherine R. Curtis, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Michael H. Keedy, Atherton & Keedy,
          Kalispell, Montana

      For Respondents:

          Jonathan B. Smith, Deputy Flathead County
          Attorney, Kalispell, Montana

                   Submitted on Briefs:  July 25, 1996

                             Decided:  August 27, 1996

Filed:

_____
        /Clerk

Justice Charles E. Erdmann delivered the opinion of the Court.

Darrin Fenger appeals the order of the Eleventh Judicial District Court, Flathead County, granting summary judgment for the defendants. The summary judgment order held as a matter of law that Fenger's dismissal was supported by reasonable job-related grounds pursuant to § 39-2-903(5), MCA. We affirm.

The issue on appeal is whether the District Court erred in granting summary judgment in favor of Flathead County.

FACTS

Darrin Fenger was hired by Flathead County in 1989 as a permanent, full-time juvenile detention officer at the Flathead County Juvenile Detention Center (JDC). He completed the county's probationary period in late 1989 or early 1990. On February 4, 1995, Fenger and his co-worker, Glenn Osborne, were on duty at the JDC. A supervisor, Dale Gifford, stopped by and saw three acquaintances of Fenger and Osborne in the center, one of whom was in a secure area of the facility. Gifford told Fenger and Osborne that at no time were visitors allowed in the secure areas of the center.

Fenger attended a staff meeting on February 14, 1995, at which the staff members were reminded that no civilian visitors were to be allowed in the secure areas of the facility. Between February 17 and February 24, 1995, Fenger and Osborne continued to allow visitors in the secure areas of the JDC. On February 25, the director of the Center circulated a memorandum to the staff stating

2

that visitors were not allowed in the secure areas and that violation of that directive would result in disciplinary action including possible termination. All staff members, including Fenger and Osborne, read and initialed the memorandum. On March 9, 1995, Fenger and Osborne were on duty when a visitor again was allowed to enter into a secure area of the facility.

Flathead County's personnel policy lists the "failure to obey any order made and given by a supervisor" as just cause for discharge. Fenger was given a notice of intent to discharge and was given the opportunity to appear before the Director to present his side of the story before any disciplinary action was imposed. Fenger and Osborne were both terminated by the Director of the JDC on April 10, 1995. Fenger then filed a notice of appeal with the Board of Commissioners of Flathead County.

A hearing was held before the Commissioners at which Fenger acknowledged that he was aware of the rule and that an individual had been in a secure area of the center on March 9, 1995. On May 3, 1995, the Commissioners met and affirmed the termination of Fenger.

Fenger filed an action under the Wrongful Discharge From Employment Act, §§ 39-2-901 through -915, MCA. Flathead County, relying on affidavits of county officials, juvenile detention center employees, and the transcript of the Commissioner's hearing, moved for summary judgment. The District Court determined there was no genuine issue of material fact and that the undisputed facts

3

established a violation of a JDC policy. The court held that this violation as a matter of law was good cause for termination pursuant to § 39-2-903, MCA. The court therefore granted summary judgment. Fenger appeals.

ISSUE

Did the District Court err in granting summary judgment in favor of Flathead County?

Our standard of review in appeals from summary judgment rulings is de novo. Wadsworth v. State (Mont. 1996), 911 P.2d 1165, 1169, 53 St. Rep. 146, 148; Mead v. M.S.B., Inc. (1994), 264 Mont. 465, 470, 872 P.2d 782, 785. This Court will apply the same evaluation as the district court based on Rule 56, M.R.Civ.P. Bruner v. Yellowstone County (1995), 272 Mont. 261, 264, 900 P.2d 901, 903. The movant must demonstrate that no genuine issues of material fact exist. Toombs v. Getter Trucking, Inc. (1993), 256 Mont. 282, 284, 846 P.2d 265, 266. Once this has been accomplished, the burden then shifts to the nonmoving party to prove, by more than mere denial and speculation, that a genuine issue of material fact exists. Bruner, 900 P.2d at 903. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. Lindey's, Inc. v. Professional Consultants, Inc. (1990), 244 Mont. 238, 244, 797 P.2d 920, 924.

Fenger argues that it is a material question of fact whether the breach of county policy constituted reasonable grounds for his

4

discharge. The county asserts that there are no material questions of fact because there was a breach of the policy and this failure to obey an order made and given by a supervisor constitutes good cause as a matter of law for dismissal.

At the hearing concerning his termination Fenger stated:

I guess all this started, Mr. Gifford came in one night and (paper shuffling) (inaudible) . . . my dates. Well, basically, there's Mr. Gifford came in and there's three of my friends on a softball team. We're making up a roster, talking about it; and, Dale came in and there's a little conflict going on in the day room with some juveniles. So, me and Glenn Osborne and I, we had the situation under control. Dale talked to us about the situation and said, you know, we can't have people coming in here, and one kid was behind the secured area.

On cross-examination, the following questions were asked and answered:

SMITH:      The night that Dale came, 4th of February. . .

FENGER:     Umhum (affirmative).

SMITH:      He told you don't let visitors in?

FENGER:     Right.

SMITH:      And you had a staff meeting not too long after that where that was discussed, didn't you?

FENGER:     Uh-huh (affirmative).

SMITH:      So you knew, in February, not to let people in?

FENGER:     OK.

SMITH:      And then, about February 25th, a memo was issued, wasn't it?

FENGER:     Umhum (affirmative).

SMITH:      Is that the memo?

FENGER:     I, uh, yes it is.

5

SMITH:    And, you read that?

FENGER:   Yes, I read and signed it.

SMITH:    And your initials are on the back?

FENGER:   Umhum (affirmative).

SMITH:    And paragraph number four of that, again talks about not having visitors, doesn't it?

FENGER:   Yes, it does.

Fenger admits to having been told by a supervisor on February 4, 1995, that visitors were not allowed in the secure areas of the facility. He admits that at the staff meeting later the same month this matter was again discussed. The record shows that Fenger attended the meeting on February 14, 1995. Disregarding this policy, Fenger allowed visitors to enter into the secure areas of the facility between February 17 and February 24. The memorandum regarding the policy was circulated on February 25, 1995. Fenger concedes in his affidavit that he had read the memo which warned of possible termination for a violation of the policy prior to allowing a visitor to enter into a secure area while he was on duty on March 9, 1995.

In Belcher v. Department of State Lands (1987), 228 Mont. 352, 355, 742 P.2d 475, 477, we determined that summary judgment is appropriate in wrongful discharge cases when the complaining party cannot point to a material and substantial act that would alter the district court's decision. In Belcher, after an extensive review of the record and deposition transcript, we held that:

6

> [N]o underlying dispute of facts is present. Belcher was not doing his job; he had received notice that his work was not adequate; he failed to rectify the situation; and he was subsequently discharged. It appears to us that no basic question of fact exists for jury determination and Belcher does not raise any specific fact question.

Belcher, 742 P.2d at 477-78.

Fenger attempts to raise a question of fact by denying that he had any knowledge of the policy prior to the February 25 memo. He argues that because the policy was new to him when he received the memo in early March 1995, the only violation which can be considered is the March 9, 1995, violation. Fenger argues that this was insufficient to constitute good cause for dismissal and that the county itself acknowledges that the policy violation of March 9, 1995, "standing alone . . . would not have resulted in discharge."

In Stott v. Fox (1990), 246 Mont. 301, 309, 805 P.2d 1305, 1309 (quoting Wilson v. Westinghouse (8th Cir. 1988), 838 F.2d 286, 289), this Court stated that:

> While the district courts must exercise extreme care not to take genuine issues of fact away from juries, (a) party should not be allowed to create issues of credibility by contradicting his earlier testimony' . . . a district court may grant summary where a party's sudden and unexplained revision of testimony creates an issue of fact where none existed before. Otherwise, any party could head off a summary judgment motion by supplementing previous depositions ad hoc with a new affidavit, and no case would ever be appropriate for summary judgment.

See also Kaseta v. Northwestern Agency of Great Falls (1992), 252 Mont. 135, 138-40, 827 P.2d 804, 806-07.

7

Fenger cannot create a genuine issue of material fact as to his knowledge of this policy prior to the circulated memo by contradicting his own testimony in his new affidavit. Fenger's own testimony established that he was given notice of the policy prior to the February 17 through 24 violations.

It is clear that Fenger was not doing his job in accordance with the policy of the JDC. Fenger failed to rectify the situation in which visitors were allowed into secure areas of the facility after he had notice of the policy. Regardless of whether or not Fenger informed visitors of the policy and directed them to stay out of the secure area, it is clear that while he was on duty visitors did enter into secure areas of the facility. Fenger failed to take adequate measures to prevent visitors from entering the secure areas which was his duty as directed by the supervisors of the facility. After reviewing the record de novo we determine that there are no genuine issues of material fact for a jury determination. See Belcher, 742 P.2d 475.

Having determined that no genuine issues of fact exist, this Court must determine whether Flathead County is entitled to judgment as a matter of law. Lindey's, 797 P.2d 920. Section 39-2-904(2), MCA, states that a discharge is wrongful only if it was not for good cause and the employee had completed the employer's probationary period of employment. Good cause is defined as meaning reasonable job-related grounds for dismissal based on a failure to satisfactorily perform job duties, disruption

8

of the employer's operation, or other legitimate business reason. Section 39-2-903(5), MCA. Flathead County's personnel policy lists as just cause for termination, the "failure to obey any order made and given by a supervisor."

The record demonstrates that Fenger did not satisfactorily perform his job duties, as he repeatedly ignored the written and oral directives to keep visitors out of the secure areas of the facility. See Miller v. Citizens State Bank (1992), 252 Mont. 472, 830 P.2d 550. We therefore hold that the violations of the county's policy by Fenger constitute, as a matter of law, reasonable job-related grounds for dismissal.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

9

August 27, 1996

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Michael H. Keedy
ATHERTON & KEEDY
735 Main Street
Kalispell, MT 59901

Jonathan F. Smith
Deputy County Attorney
Flathead County
P.O. Box 1516
Kalispell, MT 59903-1516

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: *N. Gallagher*
Deputy