No. 96-524

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

DALE THOMAS KLOCK,

Plaintiff and Appellant,

v.

THE TOWN OF CASCADE, MONTANA; GORDON BOOTH; LAURI CARY;
ROBERT NICHOLSON; MEDRIC BRUNEAU; JACK WHITAKER; ROY AAFEDT;
PEGGY BELTRONE; BARRY MICHELOTTI; JOHN STRANDELL; BRANDT LIGHT;
JULIE MACEK; MURRY MOORE; STOCKMENS BANK; ROBERT VERMILLION;
and JOHN DOES and JANE DOES, presently unknown,

Defendants and Respondents.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable James E. Purcell, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

John Keith, Attorney at Law, Great Falls, Montana

For Respondents:

Kevin C. Meek; Davis, Hatley, Haffeman & Tighe; Great Falls, Montana
(for Town of Cascade, Booth, Cary, Nicholson, Bruneau, and Vermillion)

Neil E. Ugrin; Ugrin, Alexander, Zadick & Higgins; Great Falls, Montana
(for Whitaker, Aafedt, Beltrone, Michelotti, Strandell, Light, and Macek)

Guy W. Rogers and Tiffany B. Lonnevik; Brown, Gerbase, Cebull, Fulton,
Harman & Ross; Billings, Montana (for Moore and Stockmens Bank)

Submitted on Briefs: June 5, 1997
Decided: August 12, 1997
Filed:

_____

Clerk


Justice Terry N. Trieweiler delivered the opinion of the Court.

The appellant, Dale Thomas Klock, filed a complaint against the respondents, the Town of Cascade, Montana, Gordon Booth, Lauri Cary, Robert Nicholson, Medric Bruneau, Robert Vermillion, Jack Whitaker, Roy Aafedt, Peggy Beltrone, Barry Michelotti, John Strandell, Brandt Light, Julie Macek, Murry Moore, and Stockmens Bank, in the District Court for the Eighth Judicial District in Cascade County. After a hearing, the District Court: (1) denied Klock's motion for entry of default judgment; (2) granted summary judgment in favor of the respondents; and (3) awarded attorney fees to the respondents, pursuant to 42 U.S.C.  1988.  Klock appeals.  We affirm the judgment of the District Court.

The following issues are presented on appeal:

1.    Did the District Court err when it denied Klock's motion for entry of default judgment?

2.    Did the District Court err when it granted summary judgment in favor of the respondents?

3.    Did the District Court err when it awarded attorney fees to the respondents, pursuant to 42 U.S.C.  1988?

FACTUAL BACKGROUND

In February 1995, Murry Moore, president of Stockmens Bank, contacted the Federal Bureau of Investigation (FBI), the Federal Reserve Bank (FRB), and the Cascade County Sheriff's Office and informed them that Dale Thomas Klock, in his official capacity as Mayor of Cascade, deposited $20 million in the form of money orders into the Town of Cascade's bank account.  Each money order stated that it was payable at Norwest Bank, Butte, Montana, through Account No. 8520799406.  In the past, that account belonged to the United States District Court for the District of Montana. It was closed, however, due to attempts by "Freemen" to use its funds.  In September 1994, Stockmens Bank and other Montana banks had been put on notice of these types of fraudulent transactions by a special notice from the FRB, and had been requested to contract the FBI upon receipt of such a transaction.

Robert Vermillion, general counsel for the Town of Cascade, learned of Klock's attempt to deposit the fraudulent money orders when he was contacted by Cascade Town Council member Lauri Cary.  Due to his concern that the Town of Cascade could be exposed to civil liability, Vermillion contacted Klock and unsuccessfully attempted to gather information about the money orders.  He also contacted Moore, who told him that the money orders were fraudulent.

On February 27, 1995, Vermillion prepared a memo in which he memorialized the substance of his conversations with Cary and Klock.  He also sent a letter to Klock in

which he advised him that, because he was the Town of Cascade's attorney, a potential conflict of interest could preclude him from giving legal advice to Klock regarding the money orders. Vermillion sent additional copies of that letter to Town of Cascade Council Members Medric Bruneau and Gordon Booth.

Julie Macek, Deputy County Attorney for Cascade County, investigated the matter. On March 6, 1995, she prepared an information with which to charge Klock with criminal syndicalism and official misconduct, and an affidavit in support. On that same day, Macek and Brandt Light, Cascade County Attorney, decided to issue a summons, and not a warrant, for Klock's arrest.

On March 8, 1995, Macek met with the Cascade County Attorney's staff and informed them of the charges which she and Light had decided to file. On March 9, 1995, a meeting was held at the Cascade County Commissioner's Office. The following persons attended that meeting: Cascade Town Council members Lauri Cary and Robert Nicholson; Cascade County Commissioners Jack Whitaker, Roy Aafedt, and Peggy Beltrone; Cascade County Sheriff Barry Michelotti and Undersheriff John Strandell; and County Attorney Brandt Light. The purpose of the meeting was for Light to advise the attendees that the Cascade County Attorney's Office had decided to charge Klock with criminal syndicalism and official misconduct. The attendees also discussed personal and public safety issues.

On that same day, the information was signed by the District Court and filed with the Clerk. Klock was charged with one count of misdemeanor official misconduct and three counts of felony bad check issuance. He was served shortly thereafter. Following the March 9, 1995, meeting, Council members Cary and Nicholson discussed whether Klock should be suspended as mayor pending the outcome of the criminal charges. They personally agreed that the Town's best interests would be served by a suspension. They also expressed concern with regard to the manner in which Klock or other Freemen might react to the suspension. Specifically, Cary was concerned that Klock or other Freemen might try to seize records from the Town Hall or otherwise impair the city government's operations. On that basis, she raised the issue of changing the locks to the Town Hall. She contacted Council member Bruneau and he agreed that the locks should be changed. She called a locksmith and had the locks to the Town Hall changed.

On March 10, 1995, a special meeting of the Cascade Town Council was held for the purpose of determining whether Klock should be suspended from his position as mayor. Notice of the hearing was posted at the Town Hall and at least three other locations. Approximately 100 to 150 people attended the meeting. During the meeting, all four members of the Town Council voted to suspend Klock from office pending the outcome of the criminal charges brought against him.

On August 21, 1995, Klock filed a complaint and request for injunctive relief in the District Court. The "County defendants" (Whitaker, Aafedt, Beltrone, Michelotti, Strandell, Light, and Macek) are identified in the counts which allege, inter alia, violation of civil rights, conspiracy to violate civil rights, and malicious prosecution/abuse

of process.  The "Town defendants" (the Town of Cascade, Booth, Cary, Nicholson, Bruneau, and Vermillion) are identified in the counts which allege, inter alia, wrongful
removal from office, violation of civil rights, conspiracy to violate civil rights, malicious
prosecution/abuse of process, and breach of fiduciary duty.  Moore and Stockmens Bank are identified in the counts which allege, inter alia, breach of fiduciary duty, conversion,
and violations of Montana's Uniform Commercial Code.

The Bank filed an answer and denied all liability.  The County defendants filed a
motion to dismiss, which the District Court denied.  Subsequently, the Bank, the County
defendants, and the Town defendants (collectively, "the respondents") each filed a motion
for summary judgment, supported by affidavits.

Klock filed a motion for entry of default judgment against the Town defendants and the County defendants.  After a hearing, the District Court:  (1) denied Klock's motion; and (2) granted summary judgment in favor of the respondents.

The respondents also moved the District Court to award them attorney fees, pursuant to 42 U.S.C.  1988.  After a hearing, the District Court granted that motion.

ISSUE 1

Did the District Court err when it denied Klock's motion for entry of default judgment?

At the summary judgment hearing, Klock moved the District Court to enter default judgment against the County defendants and the Town defendants.  The court, however, concluded that they made a timely appearance in the action and strenuously defended against Klock's claims.  On that basis, the court denied the motion.

On appeal, Klock contends that the District Court erred when it denied the motion
for entry of default judgment.  Specifically, he claims that the County defendants and the
Town defendants failed to file an "answer" to the complaint.  Therefore, he maintains that the court erred when it refused to enter default judgment against them.

The entry of default judgment is governed by Rule 55, M.R.Civ.P., which provides, in relevant part, that "[w]hen a party against whom a judgment for affirmative
relief is sought has failed to plead or otherwise defend as provided by these rules and that
fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default."
Rule 55(a), M.R.Civ.P. (emphasis added).

After the County defendants' motion to dismiss was denied, the County defendants and the Town defendants each filed a motion for summary judgment, pursuant to Rule 56, M.R.Civ.P.  We therefore conclude that at the time Klock filed a motion for entry of  default judgment the County defendants and the Town defendants were, in fact, "otherwise defend[ing]" as provided by Montana's Rules of Civil Procedure.

Accordingly, we hold that the District Court did not err when it denied Klock's motion for entry of default judgment.  That part of the District Court's judgment is affirmed.

ISSUE 2

Did the District Court err when it granted summary judgment in favor of the respondents?

Summary judgment is governed by Rule 56, M.R.Civ.P., which provides, in relevant part, as follows:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Rule 56(c), M.R.Civ.P.

The purpose of summary judgment is to eliminate the burden and expense of unnecessary trials. Berens v. Wilson (1990), 246 Mont. 269, 271, 806 P.2d 14, 16. This Court reviews an order which grants summary judgment de novo and applies the same criteria as the district court. Fenger v. Flathead County (1996), 277 Mont. 507, 509-10, 922 P.2d 1183, 1184. The party moving for summary judgment has the initial burden of showing the absence of any genuine issue of material fact in light of the substantive principles that entitle it to judgment as a matter of law. Cecil v. Cardinal Drilling Co. (1990), 244 Mont. 405, 409, 797 P.2d 232, 234.

After the moving party has met its burden, the burden then shifts to the party opposing the motion to establish the existence of a genuine issue of material fact. Sprunk v. First Bank System (1992), 252 Mont. 463, 466, 830 P.2d 103, 104. The party opposing the motion must present facts of a substantial nature showing that genuine issues of material fact remain for trial. Wangen v. Kecskes (1993), 256 Mont. 165, 172, 845 P.2d 721, 726.

In order to meet its burden, the party opposing the motion must present substantial evidence, not mere denial, speculation, or conclusory statements. Sprunk, 252 Mont. at 463, 830 P.2d at 105. "The opposing party's facts must be material and of a substantial nature, not fanciful, frivolous, gauzy, nor merely suspicions." Fleming v. Fleming Farms, Inc. (1986), 221 Mont. 237, 241, 717 P.2d 1103, 1105. Moreover, the opposing party cannot rest upon mere allegations in the pleadings, but "has an affirmative duty to respond by affidavits or other sworn testimony containing material facts that raise genuine issues; conclusory or speculative statements will not suffice." Groshelle v. Reid (1995), 270 Mont. 443, 447, 893 P.2d 314, 316.

In response to Klock's complaint, the Bank, the Town defendants, and the County defendants each filed a motion for summary judgment. After a hearing, the District Court made the following conclusions:

> In this case [the respondents] meet their burden of showing that no issues of material fact exist by supplying the Court with the affidavits. Because [they] have met their burden, [Klock] must present material and substantial evidence raising disputed material facts. [He] failed to provide the Court with material substantial evidence of disputed material facts.

Instead, [he] makes conclusory or speculative statements to raise a genuine issue of material fact.  Therefore, after considering all reasonable inferences from the evidence in [his] favor, the Court determines no genuine issue of material facts exist.

On that basis, the District Court granted summary judgment in favor of the respondents
with regard to all of Klock's claims.

On appeal, Klock contends that the District Court erred when it granted summary judgment in favor of the respondents.  Specifically, he claims that genuine issues of material fact exist and, therefore, that summary judgment is inappropriate.

After a review of the record, we conclude that Klock has failed to establish a genuine issue of material fact with regard to any of his claims.  In fact, the record is
devoid of any evidence to contradict the respondents' affidavits submitted in support of
their respective motions for summary judgment.  Rather, Klock relies on speculative and
conclusory statements which are not directly supported by evidence contained within the
record.  For example, the "statement of facts" in his appellate brief does not refer to
affidavits, deposition testimony, discovery responses, or any evidence in the record.
Instead, it consists almost entirely of references to oral arguments made by his counsel
at the summary judgment hearing.

Accordingly, we hold that the District Court did not err when it granted summary judgment in favor of the respondents.  That part of the District Court's judgment is affirmed.

### ISSUE 3

Did the District Court err when it awarded attorney fees to the respondents, pursuant to 42 U.S.C.   1988?

After the District Court entered summary judgment in their favor, the Bank, the County defendants, and the Town defendants each moved the court for an award of attorney fees, pursuant to 42 U.S.C.   1988.  After a hearing, the court granted those
motions.

On appeal, Klock contends that the District Court erred when it awarded attorney fees to the respondents.  Specifically, he maintains that: (1) his civil rights claims, made
pursuant to 42 U.S.C.   1983 and 1985, were not frivolous, meritless, or lacking foundation; (2) the amount of the fees awarded is unreasonable; and (3) "no basis whatsoever exists for the grant of attorney fees to [the Bank and Robert Vermillion] since
the allegations regarding these defendant [sic] do not relate to civil rights violations."

42 U.S.C.   1988(b) provides, in relevant part, that "[i]n any action or proceeding
to enforce a provision of [42 U.S.C.   1983 or 42 U.S.C.   1985] . . . the court, in its

discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the
costs."

In Hughes v. Rowe (1980), 449 U.S. 5, 101 S. Ct. 173, 66 L. Ed. 2d 163, the United States Supreme Court established the applicable standard for awarding attorney fees pursuant to 42 U.S.C.   1988.  The Court concluded that an award of attorney fees
to a prevailing defendant is appropriate if the plaintiff's civil rights claim is "meritless in
the sense that it is groundless or without foundation." Hughes, 449 U.S. at 14. Furthermore, it is well established that both the decision to award fees and the amount
of the award are upheld absent an abuse of discretion.  Wagner v. Empire Development Corp. (1987), 228 Mont. 370, 372, 743 P.2d 586, 587; Flowers v. Jefferson Hosp. Ass'n (8th Cir. 1995), 49 F.3d 391, 392.

We must first, therefore, decide whether the District Court abused its discretion
when it awarded attorney fees to the respondents, pursuant to 42 U.S.C.   1988.  The court based its decision to award attorney fees on the following rationale:

> [T]he Court examined all facts before it and found that [Klock] did not
> support his [42 U.S.C.   1983 & 1985] claims . . . with substantial
> credible facts.  In effect, this Court determined that [his] claims,
> unsupported by facts, were meritless and without foundation.  Even at this
> late date in the proceedings, [he] is unable to provide the Court with
> credible evidence of the alleged civil rights violations.

We have already concluded, when we affirmed the District Court's order granting summary judgment, that the record is devoid of any evidence which directly supports Klock's claims and that, instead, he relies on speculative and conclusory statements which
find no support within the record.  We therefore conclude that the District Court did not
abuse its discretion when it awarded attorney fees to the respondents, pursuant to 42 U.S.C.   1988.

Next, we must decide whether the amount of fees awarded by the District Court is reasonable.  After a hearing and a review of the "affidavits of attorney fees" submitted
by the respondents, the court made the following determinations:

> In this case, reasonable fees are those fees required to defend against
> [Klock's] alleged civil rights violations. . . . In using [its] discretion the
> Court determines that since [he] alleged eight counts, two of which were
> civil rights claims, [the respondents] are entitled to one-fourth or 25% of
> their attorney fees.

In essence, the District Court applied the "lodestar" approach, which involves multiplication of an attorney's reasonable hourly rate times the reasonable number of hours spent on the litigation.  Audit Serv., Inc. v. Frontier-West, Inc. (1992), 252 Mont.
142, 153, 827 P.2d 1242, 1250.  In Ihler v. Chisholm (1993), 259 Mont. 240, 855 P.2d 1009, the prevailing party moved the District Court to award attorney fees pursuant to
42 U.S.C.   1988. The court awarded attorney fees and employed the lodestar approach

when it calculated the amount to be awarded.

On appeal, we upheld the court's application of the lodestar approach and recognized that there is a "strong presumption" that an award of attorney fees calculated by the lodestar approach is a reasonable fee.  Ihler, 259 Mont. at 245, 855 P.2d at 1012 (citing City of Burlington v. Dague (1992), 505 U.S. 557, 562, 112 S. Ct. 2638, 2641, 120 L. Ed. 2d 449, 456).

We therefore conclude that the District Court did not abuse its discretion when it employed the lodestar approach and awarded the respondents one-fourth or 25 percent of their total attorney fees.

Finally, Klock contends that the District Court erred when it awarded attorney fees to the Bank and Vermillion.  Specifically, he maintains that "no basis whatsoever exists for the grant of attorney fees to [the Bank and Vermillion] since the allegations regarding these defendant [sic] do not relate to civil rights violations under Title 42 section 1983."

The record, however, does not support Klock's contention.  A review of the complaint, the transcript of the summary judgment hearing, and the District Court's order granting summary judgment, establishes that the Bank and Vermillion were forced to defend Klock's claim made pursuant to 42 U.S.C.   1985, which alleges a conspiracy to violate his civil rights.  We therefore conclude that the District Court did not err when it awarded attorney fees to the Bank and Vermillion.

Accordingly, we hold that the District Court did not err when it awarded attorney fees to the respondents pursuant to 42 U.S.C.   1988.

The judgment of the District Court is affirmed.

/S/   TERRY N. TRIEWEILER

We Concur:

/S/   J. A.  TURNAGE
/S/   WILLIAM E. HUNT, SR.
/S/   W. WILLIAM LEAPHART
/S/   JIM REGNIER